UNITED STATES, Appellee

v

FRANKIE L. WILLIAMS, Airman, U. S. Air Force, Appellant

21 USCMA 292, 45 CMR 66

No. 24,633

April 7, 1972

*Lieutenant Colonel James LaBar* argued the cause for Appellant, Accused. With him on the brief were *Colonel George M. Wilson* and *Lieutenant Colonel Norman L. Paul.*

*Captain Fred W. Kuhn* argued the cause for Appellee, United States. With him on the brief was *Colonel Henry R. Lockington.*

## Opinion of the Court

DUNCAN, Judge:

The appellant was convicted by special court-martial on February 11, 1971, of one specification of larceny and four specifications of assault and battery, in violation of Articles 121 and 128, Uniform Code of Military Justice, 10 USC §§ 921 and 928, respectively. He was sentenced to a bad-conduct discharge and confinement at hard labor for three months. On July 20, 1971, after the findings and sentence had been affirmed without change by the Court of Military Review, the Acting Judge Advocate General of the Air Force, Brigadier General Gold, acting on the basis of clemency reports submitted to him, including one from trial defense counsel, suspended the unexecuted portion of the appellant's sentence, the bad-con-

**293**

duct discharge, until May 1, 1972, with a provision for automatic remission.[1] His action, accompanied by the appellant's copy of the decision of the Court of Military Review, was forwarded on the same date to appropriate authorities at Kincheloe Air Force Base for delivery to the appellant. These papers were not then delivered to the appellant. Instead, they were returned to the Headquarters of the Air Force with a request that consideration be given to modifying the action relative to the unexecuted portion of the appellant's sentence. The request was based on information contained in statements from other Air Force personnel reflecting adversely on the conduct of the appellant since his release from confinement. The letter from Kincheloe transmitting these data was signed by Captain Hemann, assistant staff judge advocate. *Captain Hemann had been defense counsel at the appellant's trial in this case.* On August 10, 1971, the Judge Advocate General of the Air Force, Major General Cheney, sent a second letter to Kincheloe enclosing a copy of the decision of the Court of Military Review for delivery to the appellant. General Cheney did not act to suspend the bad-conduct discharge.

Appellate defense counsel contend: (1) That Captain Hemann abandoned his role as defense counsel to the appellant by seeking to persuade the Judge Advocate General to vacate the suspension of the bad-conduct discharge; and (2) that the Judge Advocate General was without authority to terminate the appellant's probationary status without a hearing having been held on the al-

leged violation of probation as provided for in Article 72(a), Code, supra, 10 USC § 872.[2]

Appellate Government counsel aver that Captain Hemann did not abandon his client since he did not initiate or participate in the taking of the statements reflecting misconduct by the appellant, but was simply the conduit for transmission of the messages to the Judge Advocate General, acting at all times at the explicit direction of the staff judge advocate at Kincheloe. They further maintain that the action of the Judge Advocate General should not be held irrevocable until it is delivered to and receipted for by the appellant, which was not done in this case.

The allied papers attached to the record of trial reveal that Captain Hemann, trial defense counsel, acted in a dual capacity *in this case.* The fact that his activities on behalf of the Government were conducted at the behest and direction of the staff judge advocate[3] is of no significant importance. Such dual representation is specifically prohibited by the law and decisions of this Court.

Article 6(c), Code, supra, 10 USC § 80, provides in part:

"No person who has acted as . . . defense counsel . . . in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case."

Article 27(a), Code, supra, 10 USC § 827, contains the following:

". . . No person who has acted for the prosecution may act later in

---

[1] General Gold's action was premised on authority contained in Article 74 (a), Uniform Code of Military Justice, 10 USC § 874.

[2] "(a) Before the vacation of the suspension of a special court-martial sentence which as approved includes a bad-conduct discharge, or of any general court-martial sentence, the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation. The probationer shall

be represented at the hearing by counsel if he so desires."

[3] Captain Hemann, in a post-trial affidavit, advised that because of his representation of the appellant at trial he demurred when directed to take part in requesting reconsideration of the suspension of the bad-conduct discharge. However, he was informed by the staff judge advocate that his representation and duty toward Airman Williams had ended and was told to proceed as ordered.

294

the same case for the defense, nor may any person who has acted for the defense act later in the same case for the prosecution."

In United States v Green, 5 USCMA 610, 18 CMR 234 (1955), appointed military counsel, who represented Green at the Article 32 investigation, thereafter, at the direction of the staff judge advocate, prepared a memorandum of the testimony which would probably be offered against that accused at his subsequent trial. In holding this dual activity in violation of Article 27(a), Code, supra, and inherently prejudicial, we said:

". . . [T]he circumstance that the lawyer's role as counsellor had, as a practical matter, terminated prior to the rendition of his challenged assistance to the prosecution, in no wise insulates or purifies this later conduct. United States v Bryant, . . . [16 CMR 747 (AFBR 1954)]." [Id., at page 615.]

For a thorough and exhaustive exposition of the role of the attorney-client relationship and its position in the civilian as well as the military justice system, a reading of the *Green* opinion is recommended.

In the case at bar Captain Hemann had acted as defense counsel, and it was still in the process of appellate review. See paragraph 48b(3) Manual for Courts-Martial, United States, 1969 (Revised edition). Therefore, his later role as assistant staff judge advocate was illegal. Article 27(a), Code, supra; United States v Green, supra, and cases cited therein. As the board of review stated in United States v Bryant, 16 CMR 747, 751 (AFBR 1954):

"The termination of the attorney-client relationship does not terminate the attorney's obligation to the client to . . . abstain from taking any part in the proceedings contrary to the client's interest. The privilege in pertinent respects might well be classified as eternal because it is, with certain exceptions not applicable here, not limited to the duration of the litigation. [Citations omitted.]" [Quoted as authority in United States v Green, supra, at pages 614, 615.]

Appellate defense counsel contend that the action of General Gold placed the appellant in a probationary status on the day it was signed, July 20, 1971, and that this status could only be terminated through compliance with the hearing provisions of Article 72 (a), Code, supra. The Government argues that, since paragraph 97b, Manual, supra, limits the misconduct which may serve as a basis for vacation of suspension of a sentence to that which occurred "within the period of suspension," the proper date for the onset of probation should be that on which the probationer receives and receipts for the appropriate document To hold otherwise, says the Government, would allow one to benefit from acts of misconduct which he commits, unbeknownst to the Judge Advocate General, before the date his action is signed or mailed.

We believe that the Government demands too narrow an interpretation of the Manual provision. In ▮▮▮▮▮ ▮ our opinion, misconduct which takes place between the date of a court-martial sentence, and that on which a probationary action is signed, may be considered in a hearing to revoke probation under Article 72(a), Code, supra.

We hold that the appellant was placed in a probationary status on the date of General Gold's letter, July 20, 1971. The letter itself expresses that intention:

"I *hereby suspend* that portion of the affirmed sentence which pertains to a bad conduct discharge. . . ." [Emphasis supplied.]

Webster's Third New International Dictionary, 1963 Unabridged edition, page 1058, defines "hereby" as:

". . . [B]y this means; esp: by means of this act or document. . . ."

In 19A Words and Phrases (Perm ed), pages 18 and 19, the cases are in general—

eral agreement that the words *hereby* and *hereby granted* fix the date on which a particular action becomes applicable even though contingent upon some future event or occurrence.

In United States v Shulthise, 14 USCMA 31, 33, 33 CMR 243 (1963), this Court held that a second action on the record by the supervisory authority, purporting to be a modification of the original action (paragraph 89*b*, Manual for Courts-Martial, United States, 1951), was invalid, despite the fact that the accused had apparently not been notified thereof nor had a court-martial order been promulgated reflecting the original action. Citing prior cases in which we held that, " 'any judicial body may review and correct its decisions at any time *while they are still within its control*.' (Emphasis supplied.)," we said:

"These authorities establish the invalidity of the supervisory authority's 'action' purportedly taken on August 2. The earlier action was neither incomplete, ambiguous, void, nor inaccurate, and he had effectively 'published' it by forwarding the record to The Judge Advocate General of the Navy for 'review by a Board of Review.' While he acted mistakenly in doing so—at least with reference to the charges on which he had ordered a rehearing— the transmittal of the record served to notify the world of his disapproval of the proceedings and ended his authority to 'reconsider' the direction of a rehearing. Cf. United States v Speller, 8 USCMA 363, 24 CMR 173 [1957]."

In the earlier case of United States v May, 10 USCMA 358, 361, 27 CMR 432 (1959), where we extensively considered the meaning and congressional intent in the enactment of Article 72 (a), Code, supra, we stated:

"The combination of the words 'suspension,' 'probation,' and 'probationer,' in the context of the Article, demonstrates that the true nature of a suspension is ascertainable from a consideration of the effects thereof. It *automatically* places the individual in a status of a probationer, and *prohibits any alteration in that status*—to his detriment— *without independent cause and without a hearing at which he may be represented by counsel*." [Emphasis supplied.]

Clearly General Gold's action suspending the bad-conduct discharge was *published* when it was ▮▮▮▮▮▮ ▮ forwarded for delivery to the appellant. The subsequent action by General Cheney, purporting to void the previous action, was invalid. United States v Shulthise and United States v May, both supra. Cf. United States v Dean, 7 USCMA 721, 725, 23 CMR 185 (1957). The Acting Judge Advocate General's "action suspending execution of the punitive discharge automatically creates a staus of probation which may not be altered save as provided for in Article 72 of the Code, supra." United States v May, supra, at page 366.

A further item remains for consideration:

Whether the convening authority properly reviewed and acted upon the record of trial in view of the grant of immunity to Airman David T. Mack.

Prosecution Exhibit 1, the pretrial statement of the appellant, included information to the effect that Airman Mack received a share, almost half, of the fruits of the larceny ($67.00) of which the appellant was convicted. An agent of the Office of Special Investigations (OSI), who testified as to the circumstances surrounding the taking of the statement, stated that Mack was present during the entire interview and signed the appellant's statement as a witness. Mack was called as a Government witness to testify relative to one of the allegations of assault and battery. He was not questioned on direct examination as to his knowledge of the larceny. When defense counsel requested guidance he was informed by the military judge that cross-examination would be limited to the assault offense. "In

the event that the witness has relevant testimony concerning Charge I, he may be called as a court[']s witness."

When the military judge directed that Mack be called to testify, trial counsel elicited from him the extent of his knowledge of the circumstances surrounding the larceny, including the fact that Mack accompanied the appellant when he fled from the scene and that he had received "half the money" from the appellant. At the request of a court member and prior to questioning by the members, the military judge advised Mack of his right to silence and his right to counsel. Article 31, Code, supra, 10 USC § 831; United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). When Mack acknowledged that he understood his rights and did not desire to have an attorney present, the military judge informed him that "the offense for which you may be suspected of may be an accessory to an alleged robbery."[4]

Under questioning by a court member, Mack testified that prior to confessing to the OSI his part in this offense, "[t]hey told me if I made a statement, nothing would happen to me or something." Another member then inquired:

"Major Ross: Who told you that?
"A: The OSI. He told me that he had talked to the Base Commander or something like that— that it had been approved by the Base Commander.

.    .    .    .    —.

"Major Ross: I have a question about the statement to the OSI agent. The OSI told you that if you made a statement that you would be immune from prosecution?
"A: Yes, sir.

"Q: Did they say if you make a statement—how was it put to you?
"A: Well, when he talked to me, he said, we don't want you—we want Airman Williams. We don't really want you and then he told me that

they had talked to the Base Commander about it and then I made a statement."

In his action on the record, the Base Commander, who was also the convening authority for this special court-martial, took no cognizance of the unrebutted testimony of Airman Mack that he was testifying under what he believed to be a grant of immunity from prosecution. The alleged grant of immunity was not discussed by the staff judge advocate in his review for the officer exercising general court-martial authority.

In a post-trial affidavit, the convening authority stated that he neither granted immunity to Mack nor did he ever discuss any such possibility with the OSI. Further, he pointed out therein that he has never been authorized to convene general courts-martial or to enter into grants of immunity with respect to the prosecution of an accused.

The rationale behind the disqualification from reviewing the record of trial of one who has granted a witness immunity from prosecution (paragraph 84c, Manual, supra) was well-stated in United States v White, 10 USCMA 63, 64, 27 CMR 137 (1958):

".  .  . This involves him in the prosecution of the case to an extent where there is at least some doubt of his ability to impartially perform his statutory duty. He must weigh the evidence, pass on the credibility of witnesses and satisfy himself from the evidence that the accused is guilty beyond a reasonable doubt. It is asking too much of him to determine the weight to be given this witness's testimony since he granted the witness immunity in order to obtain his testimony. This action precludes his being the impartial judge he must be to properly perform his judicial functions. As we said in United States v Hill, 6 USCMA 599, 20 CMR 315 [1956]:

---

[4] Appellant was originally charged with robbery but was convicted only of the lesser included offense of larceny.

'. . . (I)n the interests of justice, the appearance of evil should be avoided as well as the evil itself.'"

Cf. United States v Maxfield, 20 USCMA 496, 43 CMR 336 (1971); United States v Green, 19 USCMA 576, 42 CMR 178 (1970). See also United States v Marks, 19 USCMA 389, 391, 41 CMR 389 (1970), and cases cited, where we unanimously held that the convening authority was disqualified from reviewing the record of trial by virtue of his pretrial activity in connection with that case. In *Marks,* the accused allegedly offered to buy marihuana from a fellow Marine. During a conference between the commanding officer, the Provost Marshal, and two base investigators, the commanding officer stated that a good reliable Marine should be selected and instructed to purchase marihuana from Marks. He suggested that Sergeant Raney would be one of the best. Raney was called into the Colonel's office and, in the latter's presence, was asked if he would go along with the plan. Raney agreed and subsequently purchased marihuana from Marks. Citing as authority the above quotation from *White,* we stated in *Marks,* at page 391:

"In view of the convening authority's pretrial action in this case, which amounted to an even greater pretrial judgment as to the credibility of the Government's principal witness than would be the case in a grant of immunity, we hold that the convening authority was precluded from thereafter acting as the post-trial reviewing authority. A new review is required."

Paragraph 68*h*, Manual, supra, limits the authority to grant immunity to those "competent to order a person's trial by general court-martial." This limitation, however, does not completely bar a special court-martial convening authority from attaining the same practical result by simply not referring to trial charges which might reasonably be brought against a desired witness. Such a situation is apparently present herein.

The allied papers in this case reflect that Mack executed a pretrial written admission to the OSI that it was he who had alerted the appellant to the fact that the victim of the larceny was prominently displaying a large sum of money in the Airmen's Club and that he (Mack) had participated in the spoils. In addition, the Club's Master-at-Arms also made a statement wherein he advised that after receiving a report of robbery he originally suspected Mack because of the attendant circumstances. Mack informed the Master-at-Arms that Williams had stolen the money and had given Mack a share. Mack also told the Master-at-Arms that he could not return what he had received because he had already spent most of it. Since, to date, no one, including the convening authority whose post-trial affidavit was referred to above, has informed this Court that Mack has been brought to answer charges on this evidence and his trial testimony, we can presume that he was not. Such inaction is, in our opinion, tantamount to a grant of immunity. A new review is required. United States v White and United States v Marks, both supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for action not inconsistent with this opinion.

Chief Judge DARDEN and Judge QUINN concur.