UNITED STATES, Appellee

v

GUY C. ARMSTRONG, Second Lieutenant, U. S. Army, Appellant

No. 26,707

August 24, 1973

*Joseph Vincent Aprile, II,* Esquire, argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain Albert T. Berry,* and *Captain John D. Lanoue.*

*Captain Raymond Michael Ripple* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III,* and *Captain Richard L. Menson.*

## OPINION OF THE COURT

Duncan, Judge:

As his appeal reaches us, the appellant stands convicted of one specification each alleging the wrongful possession, transfer, and use of marihuana (Additional Charge II, specifications 1, 2, and 3), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.

His sentence, as finally approved, extends to dismissal from the service, total forfeitures, and confinement at hard labor for 20 months. We granted review on the following issue:

Whether the Court of Military Review erred to appellant's substantial prejudice by failing to rule that the testimony of Specialist Jones was inadmissible evidence since it was obtained as

the result of an illegal search of appellant's room.

In its initial opinion[1] in the matter, the Court of Military Review concluded that a search of the appellant's quarters on January 9, 1969, could not be sustained on the theory that it was authorized on the basis of probable cause since, in its opinion, the authorizing officer had not been apprised of sufficient information on which to make such a judgment. The court also declared:

In our view the record supports the conclusion that the circumstances did not demand immediate action as time in fact was taken to brief the Provost Marshal and obtain authorization from the Chief of Staff to search appellant's quarters. Assuming, *arguendo,* that the search could have been justified on the ground that immediate action was necessary to prevent the removal or disposition of criminal goods, we, in our deliberations are bound by what did happen, as revealed in the record of trial, rather than what could have happened. In the instant case, the search of appellant's quarters was accomplished, pursuant to the authorization of Colonel K, Chief of Staff, Fort Benning, Georgia.

The Court of Military Review held the search illegal, its fruits inadmissible in evidence, and set aside the findings of guilty of the Charge and its specifications (possession and use of marihuana), Additional Charge I and its specifications (transfer of marihuana and possession of heroin),[2] and ordered them dismissed. It affirmed only the findings noted above. No discussion of the testimony of Specialist Jones is found in the opinion of the Court of Military Review. The admissibility of Jones' testimony, however, was subsequently presented for consideration to the Court of Military Review in a petition for reconsideration of its opinion. The petition was denied without comment.

The offenses of which the appellant stands convicted all allegedly occurred at Fort Benning, Georgia, on or about December 31, 1968. The testimony of Specialist Jones[3] constitutes the only direct evidence in the record regarding these offenses. Without this testimony the convictions cannot stand.

Appellate defense counsel contend that Jones' testimony was inadmissible since it was obtained as the direct result of the illegal search and was tainted thereby. Counsel for the Government initially assert that the Court of Military Review could and should have found the search legal on the ground that it was made in response to emergency conditions to prevent the removal of contraband material. However, assuming *arguendo* that the search was illegal, they maintain that Jones' testimony was not obtained as a direct result of the unlawful invasion but rather by a means sufficiently distinguishable to purge the primary taint, and was, therefore, admissible in evidence.

The record reflects that when the appellant's quarters were searched at about 2:00 p.m. on January 9, 1969[4] (entry was gained to the locked room by kicking open the door), a quantity of marihuana and a number of implements common to the use of dangerous drugs and narcotics were seized. Traces of heroin were found on several of the implements. Also discovered inside a drawer

---

[1] Because of error by the military judge in his instructions on sentence, the Court of Military Review ordered a rehearing on sentence.

[2] The specified offenses in the Charge and in Additional Charge I all allegedly occurred on or about January 9, 1969, the day of the search.

[3] Although Jones testified under what appears to have been a grant of immunity from prosecution, the convening authority nevertheless acted on the record of trial. See United States v Williams, 21 USCMA 292, 45 CMR 66 (1972), and cases cited. However, in light of our action in this case we need not decide whether this was error requiring a new post-trial review.

[4] The basis for the search was a report from another lieutenant that while having lunch in the appellant's quarters on that day, the appellant and a third lieutenant smoked a substance referred to as " 'hash or nutty putty.' " The lieutenant also reported that a pipe with aluminum foil over the bowl secured by a rubber band had been used for this purpose.

in the desk in appellant's room was an unsigned, undated letter (Prosecution Exhibit 28) which contained the following:

Tom, Don, Billie Joe, Happy, Ralph, etc.

I am presently at Fort Benning awaiting discharge papers from D.A. It is taking a little longer than I planned, however I'm getting out so I can't really complain.

I have been having a groovy time here in the sunny south. I know almost every head at Fort Benning and have one of the most popular crash pads in Ga. I met a large scale dealer and have made a few bucks. I stay high and have not worn a uniform lately.

Whats new there. I'm sorry I didn't take time to write sooner but you know how it is when your head is constantly f____-up. I'll have to fill you guys in on all the details when I return.[5]

The room was described as looking like " 'a hippy pad.' "

Following the search, an agent of the Criminal Investigations Detachment was assigned to the room opposite that occupied by the appellant with instructions "to watch all activities going on in that room or all persons approaching the room and to apprehend any person entering the room or attempting to do so." Jones was among five enlisted men[6] who were apprehended at approximately 7:30 p.m. on the day of the search[7] as a result of this "stake-out." Two were observed to enter Armstrong's room, the lock being still broken. As they emerged, they were apprehended. At that time Jones and two others were found already inside the room, their entry apparently having been unobserved. Jones was held in custody at the office of the Provost Marshal for a time and then placed in the post stockade overnight. While under arrest, Jones agreed to cooperate with the investigators and to furnish information relative to his association with the appellant and his involvement with drugs. In return for his cooperation, Jones was told that "probably I wouldn't be prosecuted."

Jones' testimony at trial disclosed that on the evening of December 31, 1968, he went to a party in Room 333D in the Allied Students Division. He had been informed of the party by a friend. When he arrived, there were about eight or ten others present. At that time he learned that the room was assigned to the appellant. During the evening, according to Jones' testimony, events took place which led to the charges specified in Additional Charge II (possession, transfer, and use of marihuana),[8] of which the appellant now stands convicted. In light of his testimony at trial, Jones was considered an accomplice of the appellant. The court was so informed and given a cautionary instruction regarding their consideration of his testimony. In addition, the military judge admitted in evidence Prosecution Exhibit 28 only because it supported Jones' allegations. In view of our disposition of this case, we need not reach the question of whether this letter was subject to seizure. See United States v Hendrix, 21 USCMA 412, 45 CMR 186 (1972).

The exclusionary rule has traditionally barred from trial evidence obtained either during or as a direct result of an unlawful intrusion. Wong Sun v United States, 371 US 471 (1963); paragraph 152, Manual for Courts-Martial, United States, 1969 (Rev). Counsel for the appellant and the Government both urge this Court to apply to the question before us the following test set out in *Wong Sun,* at 488:

---

[5] Comparison of known handwriting examples of the appellant with the handwriting in Prosecution Exhibit 28 revealed that the latter was prepared by the appellant.

[6] None of the others arrested with Jones testified at trial.

[7] The appellant was arrested at his assigned place of duty at about 3:00 p.m. that same afternoon, while the search was still in progress.

[8] Jones also gave testimony which resulted in specifications that the appellant possessed, transferred, and used heroin (specifications 4, 5, and 6, Additional Charge II) on that same evening. The court-martial returned findings of not guilty on these specifications.

"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Cf.* United States v Atkins, 22 USCMA 244, 246, 46 CMR 244, 246 (1973).

■ We agree that *Wong Sun* sets forth the applicable rule. This then is the crux of the matter—whether Jones' apprehension and his later testimony can be considered to have come to the attention of the Government as a direct result of the search. As expected, counsel differ in their interpretation of the evidence on this issue. The Government contends that "the military police would have staked-out the room based on the information of Lieutenant Fouty [the original informant] alone, quite independent of the search itself." Counsel for the appellant assert that the stake-out was imposed solely because of what was found during the search.

On the basis of the record it is apparent that the identity of Jones and his apprehension resulted solely from the stake-out of the appellant's quarters as nothing was found in the room to identify Jones, in particular, as a suspect or possible witness. *Cf.* Williams v United States, 382 F2d 48 (5th Cir 1967); United States v Alston, 311 F Supp 296, 299 (DDC 1970). While he was in fact apprehended as he was exiting from the appellant's room, the search had already been completed and the appellant arrested some hours before.

■ Although the record is silent as to the precise reason for the stake-out, it reasonably can be inferred from the results of the search and the testimony of the military policeman who arrested Jones. The officer was instructed to watch the appellant's room and "to apprehend any person entering the room or attempting to do so." Why? On what basis? Certainly, no crime would have been committed by performance of this simple act. The answer is clear. The room looked like " 'a hippy pad' "; a letter had been found in the room in which the writer claimed to know "al-most every head at Fort Benning and [to] have one of the most popular crash pads in Ga." He claimed to have "met a large scale dealer and [to] have made a few bucks"; marihuana and implements common to the use of dangerous drugs and narcotics had been found in the room. All the signs pointed to the appellant's room as a major location for drug traffic. Anyone frequenting such a place becomes a logical suspect as a drug offender or, as in this case, one who reasonably might be in possession of information relative to the appellant's drug activities. That is precisely what happened here. Since all of this information about the room and its contents was obtained by virtue of the illegal search and was not otherwise known, it is clear that the stake-out and the subsequent apprehension of Jones resulted from the exploitation of the illegal search. His testimony, therefore, was inadmissible in evidence. Wong Sun v United States, supra; United States v Atkins, supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. Additional Charge II and its specifications are ordered dismissed.

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting):

In an analysis of cases dealing with testimony by a witness allegedly "tainted" by an illegal search, the Court of Appeals for the Second Circuit rejected the premise that an unlawful search in the course of an investigation of an accused gives him "life-long immunity from investigation and prosecution simply because a violation of the Fourth Amendment first indicated to the police that . . . [the accused] was not the law-abiding citizen he purported to be." United States v Friedland, 441 F2d 855, 861 (1971), *cert. denied,* 404 U S 867 (1971), 404 U S 914 (1971). I agree with that statement. I also agree with Judge Learned Hand's observation, in an earlier case, that under the exclusionary rule, the Government must show that it has not used information illicitly obtained, "either as evidence, or as the means of procuring evidence," but it is not required to prove that "the informa-

tion has not itself spurred the authorities to press an investigation which they might otherwise have dropped." United States v Nardone, 127 F2d 521, 523 (2nd Cir 1942), *cert. denied,* 316 U S 698 (1942).

Here, the information obtained in the search of the accused's room merely kept the investigation against him alive. I know of no constitutional right of the accused violated by a continuation of the investigation. The witness Jones was discovered in the course of the continued investigation, and he agreed to testify. In my opinion, his testimony was not "tainted" by the earlier misconduct of the enforcement authorities. I would, therefore, affirm the decision of the Court of Military Review.