## UNITED STATES, Appellee

v

## HAROLD M. DICKERSON, Private, U. S. Army, Appellant

No. 26,795

November 16, 1973

*Captain John T. Willis* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Peter M. Davenport.*

*Captain David A. Schlueter* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Major Thomas P. Burns, III, Captain Merle F. Wilberding, Captain M. Douglas Deitchler,* and *Captain Robert C. Roth, Jr.*

### OPINION OF THE COURT

QUINN, Judge:

This appeal brings up for review the effect of a pretrial promise of clemency to the principal government witness against the accused upon the qualification of the staff judge advocate and the convening authority to review the record of conviction.

In early October 1971, PFC Walford, Headquarters Company, U. S. Army Garrison Company, was awaiting trial on a charge of wrongful possession of marihuana. On October 29, a report of a meeting between Walford and the accused led to Walford's apprehension on another charge of wrongful possession. That day, negotiations between Walford, his company commander, Captain Stegemann, and Lieutenant Colonel Harris, headquarters commandant and the spe-

**22 USCMA 489**

cial court-martial authority of Walford's command, resulted in an agreement under which Walford promised to cooperate with CID agents and other "authorized personnel" regarding transactions with marihuana in the period October 28–29 and "to testify fully" concerning them "at the trial of any individuals involved." For their part, Colonel Harris and Captain Stegemann agreed, among other things, to refer any charge against Walford to a special court-martial not authorized to adjudge a bad-conduct discharge and to suspend any confinement that might be adjudged in event of Walford's conviction. Information furnished by Walford led to the charges against the accused as to which Captain Stegemann was the accuser and which were forwarded by Colonel Harris, with a recommendation for trial by general court-martial, to the Commanding General, Headquarters Command, Major General Hennessey. The file was returned by the staff judge advocate of the command for investigation, as required by Article 32 of the Uniform Code of Military Justice, 10 USC § 832. In due course, an Article 32 hearing was held. One of the exhibits mentioned in, and attached to, the investigating officer's report was the agreement for Walford's clemency. The investigating officer recommended trial by special court-martial authorized to adjudge a bad-conduct discharge. The recommendation was concurred in by Colonel Harris and the charges and report were forwarded to General Hennessey for disposition.

The command staff judge advocate prepared a disposition form (DA Form 2496) in which he recited the substance of Walford's testimony and to which he appended the Article 32 investigator's report. The staff judge advocate also recommended trial by a special court-martial with authority to adjudge a discharge. General Hennessey approved the staff judge advocate's recommendation.

At his trial before a military judge sitting as a special court-martial without court members, the accused entered a plea of not guilty to two specifications, one alleging wrongful possession of marihuana, and the other wrongful sale. Walford testified as the principal govern-

ment witness against him. The accused was acquitted of the wrongful possession offense, but found guilty of wrongful sale on Walford's testimony that marihuana found in his possession had been purchased from the accused. In the post-trial advice to General Hennessey, the staff judge advocate commented on Walford's agreement with Colonel Harris and Captain Stegemann. He advised General Hennessey that since he had not been "involved in any way in the making of the agreement," he was not "precluded from taking action in this case" as convening authority.

█ The Government concedes in its brief the "well-settled proposition that staff judge advocates and convening authorities may not involve themselves in granting immunity to a witness in a case and then later review the same case." See United States v Williams, 21 USCMA 292, 45 CMR 66 (1972). Walford's agreement assured him extensive clemency, but not freedom from prosecution. There is, however, "no substantial difference between this reduction in the degree of punishment . . . and those cases in which total immunity" is granted. United States v Donati, 14 USCMA 235, 241, 34 CMR 15, 21 (1963). Consequently, had General Hennessey directly participated with Colonel Harris and Captain Stegemann in the agreement with Walford, he could not thereafter review the record of trial. But, the Government contends that the general did not participate and was, therefore, free from any implication of prejudgment of Walford's credibility. See United States v Williams, supra. The argument overlooks the importance of General Hennessey's approval of the staff judge advocate's recommendation for disposition.

█ In an affidavit filed by the Government in connection with the appeal, General Hennessey indicates that to the "best" of his "recollection," he was not "approached" on the matter of Walford's agreement. We certainly do not doubt him. As far as the record demonstrates, however, General Hennessey was fully informed as to the content of Walford's testimony, which clearly indicated that the Government's case against the accused depended largely upon him, and

the documents accompanying the staff judge advocate's report revealed that Walford had been promised substantial clemency by two of the general's subordinate commanders. As in United States v Maxfield, 20 USCMA 496, 498, 43 CMR 336, 338 (1971), we believe "it is asking too much" to expect that General Hennessey would be "wholly free of the influence . . . [of his subordinate commanders'] action[s]" in reviewing Walford's credibility. In our judgment, therefore, the staff judge advocate erred in advising General Hennessey that he was not disqualified to review the case, and the general's review was improper.

The decision of the Court of Military Review is reversed, and the action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to another competent authority for a new review under the provisions of the Uniform Code of Military Justice.

Judge DUNCAN concurs.

DARDEN, Chief Judge (concurring in result):

Under the circumstances of this particular case, I agree that the convening authority was disqualified to review and act on the accused's record. I concur because the officer who promised clemency to Private First Class Walford in return for his cooperation was the convening authority's headquarters commandant, and the commandant's legal advisor was an officer assigned to the convening authority's staff judge advocate section. The situation is sufficiently close to those in United States v Williams, 21 USCMA 292, 45 CMR 66 (1972), and United States v Maxfield, 20 USCMA 496, 43 CMR 336 (1971), to require a new review and action.

My disagreement with the principal opinion is that I believe it is susceptible of the interpretation that any promise not to prosecute or purported grant of immunity by any commander subordinate to the convening authority is enough to disqualify the convening authority from reviewing and acting on the record. The basis for our holding in United States v White, 10 USCMA 63, 27 CMR 137 (1958), and subsequent cases is that the convening authority's involvement in granting immunity to a prospective witness amounts to a prejudgment of the witness's credibility. I do not believe that it should be extended to action by subordinate commanders that can have little or no impact on the performance of the convening authority's duties. Accordingly, I concur only in the result.