UNITED STATES, Appellee,

v.

Specialist Four (E4) James C. BRUMBAUGH, SSN 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, United States Army, Appellant.

SPCM 13120.

U. S. Army Court of Military Review.

24 Nov. 1978.

---

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain William L. Finch, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Captain Lee D. Schinasi, JAGC, and Captain Harry J. Gruchala, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and FELDER, JJ.

## OPINION OF THE COURT

PER CURIAM:

Appellant was convicted by a military judge of possession of hashish in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 and sentenced to a bad-conduct discharge, confinement at hard labor for 45 days and forfeiture of $200.00 per month for two months.

This case started when pictures were found by customs inspectors in the hold baggage of Private Moore who was due to depart from Germany to the United States in order to be discharged from the service. These pictures apparently showed Private Moore and other Army personnel with a pipe in the process of smoking a narcotic substance. The military police contacted Private Moore and, according to Private Moore, told him that if he did not cooperate with them they would bring charges against him relative to the pictures. Private Moore told the military police about the activities of appellant, and, because of the threatened prosecution, agreed to set up a "bust" of the appellant. Private Moore told the military police that on June 2, 1977, appellant would be bringing some marihuana to Private Moore's room, and, on that date the "bust" of appellant took place when the military police caught appellant with a bar of hashish in the room.

Private Moore at first agreed to stay in Germany in order to be a witness for the prosecution. He later changed his mind and indicated that he wanted to go home and would not testify. In the meantime, his battalion commander preferred charges against Private Moore based upon past conduct. Private Moore claimed he was told that if he testified, he could go home and these charges would be dropped.

Private Moore told the trial counsel prior to trial that he did not want to testify because the trial was interfering with his scheduled DEROS. He also told him that appellant's defense counsel had told him that the government was violating his rights by refusing to let him leave and that he should contact the USAREUR Inspector General and the division commander. Trial counsel told Private Moore that he did not believe any of his rights were being violated and if he refused to testify because he did not want to be involved or inconvenienced, he could be charged with a violation of Article 134, UCMJ.

After Private Moore testified at trial, the battalion commander dropped the charges he had preferred and he was allowed to return to the United States.

Appellant testified at trial. He admitted that he had delivered the hashish to Private Moore's room, but claimed that he had done it as a favor for Private Moore when appellant, by chance, met in town one of Private Moore's German contacts who asked him to deliver a package to Private Moore. Appellant's testimony was impeached by his oral admissions to the military police and his company commander wherein he stated that he had purchased the hashish for 300 Marks and was going to distribute it in order to recoup the cost. His theory of defense was entrapment and lack of knowledge that the package contained hashish.

Commensurate with his theory of defense, appellant never objected to the introduction of the laboratory report of the analysis of the hashish on the ground that it was hearsay, or on the ground that the introduction of the report violated his confrontation rights under the Sixth Amendment to the United States Constitution. In the absence of an objection to the report or a request for the chemist, his complaint on appeal is without merit. *United States v. Miller,* 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Evans,* 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). Moreover, there is sufficient evidence independent of the laboratory report to identify the substance as marihuana.

Appellant next contends that his Sixth Amendment right to confrontation and right to due process under the Fifth Amendment to the Constitution of the United States were violated when the military judge refused to grant a continuance and refused to keep Private Moore in Germany after he had testified at the trial. Prior to the commencement of the trial, appellant's individual trial defense counsel, Captain Duffy, moved for a continuance on the grounds that he had just been notified 16 days ago that he had been named as individual defense counsel, that he was able to interview the accused for the first time a week ago, and that he did not have time to prepare his case, and investigate all the witnesses. Captain Duffy stated that he had not interviewed Private Moore although he had spoken with him on the telephone and had an opportunity to interview him earlier that morning. Trial counsel explained that Private Moore was already being held beyond his ETS and told the military judge that Captain Duffy had spoken with Private Moore previously but instead of interviewing him as a witness, chose to give Private Moore legal advice as to the illegality of the government's keeping him in Germany. The military judge denied the continuance and the government's first witness was Private Moore. Captain Duffy asked for an opportunity to interview Private Moore prior to his testifying. His request was denied but the judge told Captain Duffy that if his cross-examination was not satisfactory, he would allow him to interview Private Moore and call him to the stand as a hostile witness.

After Private Moore testified on direct examination, indicating he had a port call

the following day, Captain Duffy requested the right to reserve cross-examination. The military judge denied the motion but recessed the trial for fifty-one minutes in order to give Captain Duffy a chance to interview Private Moore. When the trial was reconvened, Captain Duffy stated that he did not feel adequately prepared to cross-examine Private Moore but then embarked upon a cross- and re-cross-examination covering twenty-seven pages of the record of trial.

After Private Moore concluded his testimony, Captain Duffy requested that he be only temporarily excused because he wanted him available for possible impeachment and to confront him with evidence that might be uncovered. Private Moore had testified at trial that his testimony might be different if he were sent back to the United States and returned to Germany some time in the future in order to testify. However, Private Moore meant that he probably would not be able to remember as much as he presently did. Nevertheless, Captain Duffy also asserted, as a ground for only temporarily excusing Private Moore, that he should be subject to recall as a civilian, because, as Private Moore stated, his testimony would probably be different if he testified as a civilian. The military judge denied appellant's request and permanently excused Private Moore.

After the government rested its case, the trial was recessed for seventeen days. When the trial reconvened after this recess, appellant put on his defense, which included witnesses who testified that Private Moore had a bad reputation for truth and veracity and a medical doctor who opined that appellant, due to ingestion of intoxicants, might not have voluntarily waived his rights when he gave his version of the incident to the military police.

■ We do not agree that appellant's Fifth and Sixth Amendment rights were violated when the judge refused to grant a continuance and when he refused to hold Private Moore subject to recall. Captain Duffy had an opportunity to interview Private Moore prior to trial. Instead, he chose to suggest to Private Moore how he might be able to leave prior to trial. The morning of the trial, and before it started, Private Moore was made available to Captain Duffy, but the Captain refused to talk to him. The judge gave Captain Duffy an opportunity to interview him prior to cross-examination. Captain Duffy did so, with the thrust of his cross-examination being that Private Moore was forced to testify and was willing to lie in order to return to the United States. This theme was followed up in the appellant's case-in-chief with testimony by witnesses that they would not believe Private Moore under oath. Appellant did not then, nor has he now, shown why Private Moore should not have been permanently excused. We are unable to say that a violation of appellant's constitutional rights occurred.

■ Appellant's last contention is that the convening authority was precluded from taking action in his case because the Chief of Criminal Law and Private Moore's battalion commander, by their actions, had granted Private Moore immunity. The battalion commander and the Chief of Criminal Law deny ever telling Private Moore that if he testified, and testified truthfully, that the charges which were prepared would be dropped. Our review of the record of trial convinces us that no one granted Private Moore any type of immunity. We also are convinced that the decision to dismiss the previously preferred charges against Private Moore was made on grounds apart from his testimony in the case at bar rather than being dismissed as a *quid pro quo* for that testimony. Assuming *arguendo* that Private Moore was told that if he testified, the preferred charges would be dropped, we are unable to agree that a new action is necessary here. Grants of clemency to critical witnesses by subordinates or by the convening authority himself cause the convening authority to become disqualified from acting in a case which turns on credibility of such witnesses. *United States v.*

*Allen,* 3 M.J. 725 (A.C.M.R.1977).* The case here did not turn on Private Moore's credibility. Exclusion of his testimony still shows appellant to be guilty. He was caught by the military police in possession of the hashish and in the process of trying to hide it. He told the military police that he was the one who purchased the hashish. The next day, he told his company commander the same thing. The convening authority did not have to rely on Private Moore's testimony.

The findings of guilty and the sentence are affirmed.

FELDER, Judge, dissenting:

Neither the law nor my conscience would allow me to concur in the principal opinion that the convening authority was not disqualified from acting on this case.

In the military a convening authority may not grant immunity to a prosecution witness who testifies and thereafter reviews or acts upon the case. The reason for the disqualification is that such action renders his impartiality suspect with reference to weighing the testimony of the witness to whom he granted immunity. *United States v. Smith,* 1 M.J. 83 (C.M.A.1975); *United States v. Moffett,* 10 U.S.C.M.A. 169, 27 C.M.R. 243 (1959); *United States v. White,* 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958). This principle extends to cases in which the convening authority knows that a subordinate commander had made promises of immunity or clemency to a prosecution witness in order to obtain his testimony. The rationale behind the disqualification is that the relationship between the two commanders is such as likewise to preclude the sort of impartial review that the Code requires. Article 64, UCMJ, 10 U.S.C. § 864; *United States v. Chavez-Rey,* 1 M.J. 34 (C.M.A. 1975); *United States v. Cruz,* 23 U.S.C.M.A. 238, 49 C.M.R. 291 (1974); *United States v.*

---

* Our reading of those cases where the convening authority is precluded from impartial review thereof because he granted immunity to a witness or was aware that a subordinate extended such immunity discloses that the witnesses involved were a critical part of, if not essential, to the Government's case. The United States Court of Military Appeals per curiam opinion in *United States v. Chavez-Rey,* 23 U.S.C.M.A. 412, 50 C.M.R. 294, 1 M.J. 34 (1975) based the decision to disqualify the convening authority from reviewing and acting upon that case on the decisions in *United States v. Sierra-Albino,* 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974) and *United States v. Dickerson,* 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973). The witness granted immunity in the former case was described by Senior Judge Ferguson, author of the principal opinion (Judge Duncan concurring and Judge Quinn concurring in result) as "one of the principal witnesses against the accused." *Sierra-Albino, supra,* 23 U.S.C.M.A. at 64, 48 C.M.R. at 535. In the latter case, Judge Quinn in the principal opinion (Judge Duncan concurring and Chief Judge Darden concurring in result) pointed out that the pretrial promise of clemency was given to the "principal government witness against the accused . . . ." *Dickerson, supra,* 22 U.S.C.M.A. at 489, 47 C.M.R. at 790. The Court of Military Appeals per curiam opinion in *United States v. Smith,* 1 M.J. 83 (C.M.A.1975) relied upon *United States v. White,* 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958) as well as *Sierra-Albino, supra,* and *Dickerson, supra.* The witness in *White, supra,* testified as to the accused's and his own participation in the offenses tried. In *Smith, supra,* a guilty plea case, the statements of two witnesses granted immunity were used by the Government during the sentencing portion of the trial to aggravate offenses involving the subornation of perjury. Senior Judge Ferguson, writing for a unanimous court in the case of *United States v. Ward,* 1 M.J. 176 at 181 (C.M.A.1975) pointed out that the witness in question ". . . was not a minor government witness. As an alleged accomplice of appellant in most of the charged offenses, his testimony was critical in itself and as support for that of other prosecution witnesses." In *United States v. Nelson,* 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1975) the witness granted immunity therein was depicted as the principal figure in the Government's entire case against the accused. The witness in question in *United States v. Cruz,* 23 U.S.C.M.A. 238, 49 C.M.R. 291 (1974) was involved in the same incident with Cruz which resulted in their separate prosecutions. In *United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972), the witness involved testified to the circumstances surrounding a larceny offense including the fact that he accompanied the accused when he fled from the scene and that he received "half the money" from the appellant. The witness involved in the case of *United States v. Maxfield,* 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1971) was also an accomplice and a key witness for the Government. The factual situation in *United States v. Moffett,* 10 U.S.C.M.A. 169, 27 C.M.R. 243 (1959) was said to be analogous to that in *White, supra.*

*Sierra-Albino,* 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. Dickerson,* 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973).

The record of trial and allied documents show that pictures depicting Private John T. Moore as a drug user were found in his hold baggage that was to be shipped from Germany to the United States. He was contacted by military criminal investigators and agreed to cooperate with them in the orchestration of a controlled purchase of contraband involving the appellant. After the appellant was apprehended but prior to trial, Private Moore decided that he would prefer to return to the United States for discharge on 1 July 1977 rather than testify against the appellant, his friend. His records were flagged, port call cancelled and charges were preferred against him for drug abuse on unspecified dates. The charges were not related to events surrounding his role in the apprehension of the appellant.

At the trial of the appellant held on 13 July 1977, Private Moore testified that he was told by his battalion commander and the "JAG people" that if he did not testify, they would pursue the charges against him. If he did testify, however, he could "go home tomorrow." The battalion commander and judge advocates involved deny that such an arrangement was made. They declare that charges against Private Moore were dismissed and he was permitted to depart the day after the trial because his testimony was consistent with his pretrial statement. They also explain that since Private Moore's testimony did not deepen his involvement in drug activities, there was no need to continue to pursue the preferred charges. Because a witness is protected by the privilege against self-incrimination, their explanation is untenable.

I am convinced by the evidence that the preferral of charges against Private Moore was an administrative strategy to retain him in the command to testify. To conclude otherwise is simply to ignore the facts. In an uncontradicted post-trial affidavit, the trial defense counsel stated that the trial counsel advised him prior to the proceedings that Private Moore was charged only for the purpose of keeping him in Germany as a witness. I condemn this practice in favor of deposing a departing witness to preserve his testimony. The use of a deposition, of course, would depend upon the availability of the witness at the time of trial. Private Moore testified that he would be willing to return to Germany as a civilian witness.

In *United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972), it was held that the inaction of a subordinate commander in not preferring charges against a co-actor in exchange for his testimony is tantamount to a grant of immunity. Likewise, in my opinion, the dismissal of charges against a prosecution witness immediately after he testifies in exchange for his testimony has the same practical effect as granting immunity. In the interest of justice, the appearance of evil should be avoided as well as the evil itself. *Id.* at 298, 45 C.M.R. at 72. This is especially apropos where the Government has engaged in conduct of questionable propriety.

Furthermore, resolution of the question of whether Private Moore in fact had a grant of immunity or only believed it does not detain me because, in either event, the effect upon his credibility is exactly the same. A witness, even when operating upon such a belief alone, might otherwise be tempted to testify falsely in order to maintain his eventual escape from the consequences of his own misconduct. *See United States v. Nelson,* 23 U.S.C.M.A. 258, 261, 49 C.M.R. 433, 436 (1975).

I disagree with the majority's conclusion that the convening authority was not disqualified because Private Moore was not a critical witness. The prosecution relied upon the testimony of Private Moore, a military police investigator, a CID agent and a laboratory report to convict the appellant. Private Moore's testimony concerns his previous drug dealings with the appellant, the total circumstances surrounding the attempts by the appellant to transfer marihuana to him, and the eventual apprehension of the appellant. The mili-

tary police investigator testified about his relationship with Private Moore and the apprehension of the appellant with marihuana in his possession. However, through cross-examination he admitted that he had been relieved from duty pending an investigation of the charge of illegally transferring drugs to Private Moore. The CID agent testified that the appellant verbally admitted possessing marihuana.

True, the appellant admitted possessing marihuana but he raised the issue of entrapment by testifying that Private Moore arranged for one of his German friends to give him a package to deliver to Private Moore. He further testified that he was not aware the package contained marihuana.

I am convinced by the evidence that Private Moore was an essential witness. Apparently, his battalion commander and the trial counsel regarded him a critical witness because he was retained in the Army fourteen days beyond his ETS under questionable circumstances so he would be available to testify. Furthermore, without deciding, I do not believe that the criticality of the testimony of an immune witness determines whether the convening authority is disqualified. Seldom, if ever, is immunity granted to a nonessential witness.

The precise question to consider is whether the convening authority or his subordinate has placed his imprimatur on the witness' credibility by extending immunity. *United States v. Sierra-Albino,* 23 U.S.C. M.A. 63, 65, 48 C.M.R. 534, 536 (1974). If so, he is disqualified as in this case. Therefore, a new review and action are necessary.