**UNITED STATES**

v.

**James M. WHITE, 532 76 1088, Private First Class (E–2), U. S. Marine Corps.**

**NMCM 81 0200.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 9 June 1980.

Decided 26 May 1981.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

LTCOL J. Dewayne Littlejohn, USMC, Appellate Government Counsel.

Before GREGORY, Senior Judge, and DONOVAN and GLADIS, JJ.

DONOVAN, Judge:

Pursuant to a pretrial agreement (PTA), appellant pleaded guilty and was convicted of four offenses: an unauthorized absence of five weeks, disrespectful language to a sergeant, assaulting a corporal, and being drunk and disorderly in quarters. Articles 86, 91, 128, 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 891, 928, 934. The military judge considered evidence of one prior special court-martial conviction and two nonjudicial punishments in sentencing him to a bad-conduct discharge, reduction to pay grade E–1, forfeiture of $150.00 per month for 3 months, 45 days hard labor without confinement to be followed by 30 days restriction.

The PTA allowed the convening authority (CA) to approve any reduction and forfeitures adjudged; he was required to suspend execution of the discharge and any confinement in excess of three months. We need not address the latter element as the CA remitted all hard labor and restriction in his action. The CA noted post-trial misconduct, however, and repudiated the PTA,

approving the punitive discharge without suspension.

Appellant has assigned one error:

THE MISCONDUCT CLAUSE CONTAINED IN THE APPELLANT'S PRETRIAL AGREEMENT WAS INSUFFICIENTLY CLEAR TO BE ENFORCEABLE, THEREFORE, THE CONVENING AUTHORITY IS BOUND TO THE AGREED TERMS OF THE AGREEMENT. *UNITED STATES v. DAWSON*, 10 M.J. 142 (C.M.A.1981); *UNITED STATES v. THOMAS*, 27 M.J. 766 (N.C. M.R.1981).

Appellant was given notice of the adverse action intended and opportunity to appear at a hearing with his trial defense counsel. He declined in writing to do so. The Government points to the CA's intended hearing and to appellant's waiver as curing any defects.

Examining language similar to that used in the misconduct clause of this agreement, another panel of this court found a misconduct clause "insufficiently clear to be enforceable." *United States v. Thomas*, 10 M.J. 766 (N.C.M.R.1981). Although the convening authority in *Thomas* conducted a hearing prior to voiding the agreement based on Thomas' post-trial offense, it was determined that the "misconduct provision of the agreement was not detailed and explicit enough as to what constituted an act of misconduct or what procedures would be used to determine whether the provision had been violated." *Id.*, at 767. The unbargained for clause was set aside and the sentence reassessed, one judge dissenting in part.

Appellant's pretrial agreement addressed future misconduct in these words:

It is further understood that the convening authority will not be bound by the terms of this agreement should I engage, after date of trial but before the action of the convening authority, in any misconduct amounting to a violation of the Uniform Code of Military Justice or state or federal criminal law. Should such misconduct occur, the convening authority may take his action on this case without being bound by the provisions of this agreement.

The military judge addressed this condition during his inquiry into the pretrial agreement with only one question:

MJ: All right. It goes on to say that you know that you are on probation, in other words, you promised to not violate the Code from today's trial until the Convening Authority takes his action on the record of trial. That if you were to violate the Code, then the Convening Authority can say, "I am not bound by the pretrial agreement because you broke your promise to behave yourself during that period." Do you understand?[1]

ACC: Yes, sir.

(R. 30).

Like the clause condemned in *United States v. Dawson*, 10 M.J. 142, 148 (C.M.A. 1981), this one did not set out in its terms any provision for a hearing prior to adverse action. Even had a hearing been provided for in its terms, the clause suffers the vagueness discussed at length in *Dawson* and found impermissible in *Thomas*. The remedy *Dawson* indicates is that the unbargained for portion of the sentence approved by the CA should be set aside. *United States v. Dawson, supra* at 150.

The Government argues that, even though the convening authority's action occurred before the Court of Military Appeals announced its decision in *Dawson*, the CA satisfied *Dawson*'s due process objections by his compliance with the Article 72, UCMJ, 10 U.S.C. § 872, hearing procedures. The accused was informed of the misconduct, advised that the terms of the PTA had been violated and was advised that a hearing was to be conducted at which he and his counsel could be present and present matters for consideration. The accused and his trial defense counsel signed the following response to the CA:

1. I have been notified that a hearing is to be conducted in my case. I have dis-

---

1. No mention of state or federal law occurred in Judge Breen's brief colloquy.

cussed this with First Lieutenant [G], my defense counsel. Lieutenant [G] has explained to me the rights that I have with respect to this proceeding. Lieutenant [G] has also discussed with me the implications of a bad conduct discharge.

2. I know and understand that my rights with respect to a rescission hearing include, but are not necessarily limited to, the following:

a. To have a hearing as to the alleged violation of the terms of the pretrial agreement.

b. To be represented by counsel at the hearing.

c. To cross-examine all adverse witnesses.

d. To present matters in defense and mitigation.

e. To have the commanding officer examine requested witnesses.

f. To present a personal statement to the commanding officer in any form.

3. I know and understand the nature of the alleged violation of the pretrial agreement and the name of the person alleging the violation of the pretrial agreement. I am also familiar with the evidence which would be presented to support the alleged violation of probation.

4. I further understand that a bad conduct discharge may deprive me of virtually all rights as a veteran under both Federal and State Legislation, and that I may expect to encounter substantial prejudice in civilian life in situations where the type of service rendered in any branch of the Armed Force or the character of discharge received therefrom may have a bearing.

5. Understanding the foregoing rights and advice, I hereby knowingly and consciously waive any and all rights to a hearing on my alleged violation of the pretrial agreement.

The Government argues that any vagueness in the misconduct clause could have been contested at the hearing but appellant waived that opportunity. We observe that because the misconduct consisted of purely military offenses, the question of appellant's understanding of what "state or federal criminal law" applied is moot.

The Government acknowledged that the Court of Military Appeals found in *Dawson* that the operation of the post-trial misconduct clause had clearly prejudiced the appellant and the Court set aside the unbargained for portion of the sentence. The Government therefore recognizes the normal remedy would be to reinstate the original PTA as though no misconduct had occurred. The Court of Military Appeals has also opined, however, that misconduct which takes place between the date of a court-martial sentence and that on which a probationary action is signed may be considered in a hearing to revoke probation under Article 72(a), UCMJ. *United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972). Judge Fletcher recognized this prerogative of the convening authority in *United States v. Dawson, supra* at 147, when he stated:

It must be remembered that punishment for a violation of the Uniform Code of Military Justice during this period [2] may be imposed lawfully in several ways.

. . . .

3. If the convening authority promised to suspend the sentence rather than approve the lower term (Article 71 [UCMJ]), these infractions could have been treated at a vacation hearing (Article 72(a) [UCMJ]) with certain due process protections. *See United States v. Rozycki,* 3 M.J. 127 (C.M.A.1977); *United States v. Bingham,* 3 M.J. 119 (C.M.A. 1977); *see also United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972).

We further adopt some language of appellate Government counsel who notes that the author of the lead opinion in *Dawson* went on to point out that one of the additional vices was that the misconduct clause sidestepped the key requirement of Article 72, UCMJ, that a hearing be conducted.

By viewing the proceedings offered to appellant for the rights they accorded, rath-

---

2. The post-trial period from date of trial to date of the convening authority's action.

er than by the name applied (Article 72 hearing vice rescission of PTA), it is apparent that the Government complied with required due process.[3]

The assigned error is therefore rejected and the findings and sentence, as approved on review below, are affirmed.

Senior Judge GREGORY and Judge GLADIS concur.

---

3. For commands making use of this practice, the PTA should recite the rights to a hearing, so the accused may have prior knowledge and so that the judge can inquire on the record as to his understanding.