UNITED STATES, Appellee

v

RONALD E. WHITE, Basic Airman, and
ROBERT J. SIRPLESS, Basic Airman,
U. S. Air Force, Appellants

10 USCMA 63, 27 CMR 137

No. 11,656

Decided November 28, 1958

*Lieutenant Colonel Ellis L. Gottlieb* and *Lieutenant Colonel Robert O. Rollman* were on the brief for Appellants, Accused.

*Lieutenant Colonel Robert W. Michels* and *Major Fred C. Vowell* were on the brief for Appellee, United States.

HOMER FERGUSON, Judge:

The accused were convicted by general court-martial of conspiracy to commit escape from confinement, and escape from confinement, in violation of Articles 81 and 95 of the Uniform Code of Military Justice, 10 USC §§ 881 and 895, respectively. One of the prosecution witnesses was Airman Oller who testified as to accused's and his own participation in the offenses in return for a grant of immunity. The witness, Oller, testified that he did not initiate action looking toward a grant of immunity. The pretrial papers reflect that the immunity was recommended by the staff judge advocate to the convening authority in his pretrial advice, and approved by the convening authority. The document embodying the grant of immunity was signed by the staff judge advocate, "For the Commander."

The two granted issues in the case are dwarfed by the real issue involved. Both issues were phrased in terms of bias or prejudice on the part of the convening authority, arising out of the grant of immunity. Assuming, without deciding, that the errors raised by appellate defense counsel have merit, they go only to the validity of the convening authority's action in the case. We prefer to consider his action on the basic underlying issue of whether the convening authority, by granting immunity to the witness, Oller, is thereby precluded from acting further in the case. We find that he is. A comparable question as to a staff judge advocate was before this Court in United States v Albright, 9 USCMA 628, 26 CMR 408. There, it was decided that a staff judge advocate, who had been instrumental in inducing a co-conspirator to testify against the accused, and who had personally assured the witness that he would recommend a sentence reduction, was disqualified to review the record of trial of the accused. We said in part:

". . . The fact that the staff judge advocate here was instrumental in prevailing upon the witness, Cates, to testify against the accused leaves

no doubt that his action had the earmarks of advocacy and zealous prosecution. *He was precluded from rendering an unbiased and unimpassioned review as required by the Code.* We hold, therefore, that the staff judge advocate was disqualified to review the record of the trial of the accused. As we said in United States v Renton, 8 USCMA 697, 25 CMR 201, 'the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome and less so when the outcome concerns the accused's denial of substantial rights.' "

It is but necessary and logical to apply the same rule to the convening authority himself. There is even greater need to do so. While the staff judge advocate merely presents his opinion to the convening authority (Article 61 of the Code, supra, 10 USC § 861), it is the convening authority who is by law empowered to act on the record (Articles 60, 62, 63 and 64, of the Code, supra, 10 USC §§ 860, 862, 863 and 864). Whether the fact is that the convening authority actively sought out the witness or the staff judge advocate did so with his concurrence, the grant of immunity was given by the convening authority. This involves him in the prosecution of the case to an extent where there is at least some doubt of his ability to impartially perform his statutory duty. He must weigh the evidence, pass on the credibility of witnesses and satisfy himself from the evidence that the accused is guilty beyond a reasonable doubt. It is asking too much of him to determine the weight to be given this witness's testimony since he granted the witness immunity in order to obtain his testimony. This action precludes his being the impartial judge he must be to properly perform his judicial functions. As we said in United States v Hill, 6 USCMA 599, 20 CMR 315:

". . . [I]n the interests of justice, the appearance of evil should be avoided as well as the evil itself."

The disposition of the case need detain us only briefly. Under the facts of

this case, there was nothing to preclude the convening authority from referring the charges to trial. Whether under different circumstances a convening authority might be precluded from referring a case to trial where he grants immunity, we need not decide. The grant of immunity here was given after the Article 32 investigation (Code, supra, 10 USC § 832), upon which the decision to refer the case to trial was made. The convening authority, by referring the case to trial, was not placed in the position of passing judgment upon his prior action. The inability of the convening authority to act, therefore, under the circumstances of this case, extends only to his post-trial action.

The record of trial is returned to The Judge Advocate General of the Air Force for post-trial review by a different staff judge advocate, and action by a different convening authority.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

Unfortunately the inevitable, but nonetheless undesirable, occurrence which I forsaw as a result of the majority opinion in United States v Albright, 9 USCMA 628, 26 CMR 408, has now come to pass. I would much prefer not having been prophetic, for I believe the Court errs to the detriment of military law by stripping a convening authority of his judicial power and disqualifying him from performing his review functions in a particular case simply because he has, in his official capacity as an officer exercising general court-martial jurisdiction, previously granted immunity to a Government witness in the case. The detriment of which I speak affects both the government and the accused. As to the former, the review of cases is complicated and delayed and, as to the latter, the prospects of clemency are decreased. If there is a chance for an accused to be given favorable consideration, the possibilities are diminished by having his record reviewed by an officer far removed from any personalized contact with him and unfamiliar with the disciplinary problems of the command. Those officers who do not have an opportunity to size up the accused are handicapped in their attempt to fit the punishment to the person, and they have a natural reluctance to return him to a command without the approval of the interested commander.

With those few comments, I pass on to the legal aspects of the problem. My views concerning the distinctive peculiarities inherent in the military judicial system and the duality of functions frequently imposed by Congress upon those charged with the administration of this system were set out at length in my dissenting opinion in the *Albright* case, supra. While they are cogent, it is unnecessary to repeat those views here. However, certain differentiating factors in the case at bar necessitate comment.

Traditionally, the right in the military to grant immunity from prosecution has rested in the hands of an authority competent to order trial. Originally it took the form of nolle prosequi of the accusation against one of the offenders, and I can trace the history of that power from at least 1893 until the present time. Much before then the same officer reviewed the record of trial, and it must always have been assumed that he would act fairly and impartially in both offices. Either Congress has been lax in permitting officers to operate in conflicting areas or it concluded those occupying positions of trust had the capacity to perform honestly their statutory functions in both fields. For my purpose, I accept the latter philosophy for Congress has considered the question of disqualifying convening authorities and has not yet seen fit to use the conditions present in this case for that purpose. As a matter of fact—over the contrary recommendations of a number of well-informed witnesses—it purposely delegated to a convening authority the power to act in a number of areas where it appears he must alter his views to fit the role he is occupying, without regard to his prior action. One need only read some of the testimony before the Committees of Congress to understand Congress was

well advised that a reviewing officer was being clothed with powers which required he have some mental resiliency to administer and adjudge dispassionately and properly. I believe the powers exercised in this case—if it can be said the commander's grant of immunity is inconsistent with his subsequent review—must be catalogued with those which Congress concluded were not so hostile as to require legislative interference with existing law, regulations, and customs of the service.

To grant immunity is purely an official act that falls upon a convening authority by virtue of his assignment. His position is substantially similar to that of judges in civilian courts who, in many jurisdictions, must approve or consent to grants of immunity before they become valid. See annotation: 18 Ann Cas 747. I do not know of any case, nor has my attention been called to one, where a judge was disqualified from hearing a case, imposing a sentence, or hearing a petition for new trial merely because he granted immunity to a joint offender.

To follow the reasoning of the majority opinion, one must ignore the purpose of the grant and the prime interest of the law in the exposition of truth and the disposition of justice. The purpose of the grant is merely to remove the bar of self-incrimination which closes the mouth of one who is known to have some information relating to the offense. The interest of the law is to ascertain the truth. It is not necessary that a convening authority, to make those objectives attainable, have a fixed opinion on the veracity of a witness. On the contrary, he could not possibly make that determination until the person who received the grant had testified under oath, been cross-examined, and subjected to the tests of credibility and balanced against any witnesses testifying in opposite vein. It should be obvious that the witness starts under a cloud of unreliability, for he is himself a party to the crime and there is a natural tendency to reject the testimony of an admitted criminal. About all this case accomplishes is to discourage a commander from performing administrative duties which are calculated to permit the court-martial to ascertain all of the facts. The request for immunity merely discloses one source from which evidence might be obtained, and the grant only opens the way to its production. The witness is not compelled to testify but, if he chooses to do so, he need not be concerned that the evidence tends to incriminate him. And, parenthetically, I might note that this is not a one-way gate which opens only for the prosecution. I have read records where an accused benefited by having a witness freed from prosecution to present favorable testimony for the defense.

For many years it has been accepted doctrine in American military jurisprudence that it is unfair to prosecute a person who, in order to assist the sovereign, or the accused, testifies against himself. Moreover, the right against self-incrimination is one of the constitutional guarantees afforded a witness and, in order for him to be fully protected by immunity, the grant must have its sources and sanction in the law. In military jurisprudence, the convening authority is the source of the grant. Daily newspapers of recent vintage inform me of the efforts of Congress to give legislative immunity to witnesses appearing before committees of both houses. Various states have enacted laws which permit grants of immunity. Surely, by exercising the power to grant immunity, the respective bodies, courts, and committees are not bound to accept the testimony of the witnesses. Removing the bar is a form of compulsion on the witness to take the stand, but it is not a stamp of verity on his testimony. That same reason should apply here, for if it does not, we will find ourselves disqualifying convening authorities because they order the taking of depositions by the Government and the subpoenaing of prosecution witnesses. Those, like grants of immunity, are expedients which permit the Government to produce evidence, and presumably the taking of a deposition or the production of a witness would not be requested unless the testimony was believed to be favorable to the prosecution. If we are to keep our concepts

consistent, I wonder just where this decision of the Court will take us.

So there will be no mistake about the position I take, I call attention to the fact that there is no evidence in this record that the convening authority took any part in influencing the witness to testify other than by granting the immunity. See United States v Kennedy, 8 USCMA 251, 24 CMR 61. Obviously, under the law the request had to be presented to him for action. If, under those circumstances, as my associates state, "It is asking too much of him to determine the weight to be given this witness's testimony since he granted the witness immunity in order to obtain his testimony," I am in error. However, I leave to others a determination of whether I stand alone.