UNITED STATES

v.

Private First Class Chris L. SIMS, 262–11–7943, U. S. Army, Headquarters Company, Headquarters Command, Fort Belvoir, Virginia 22060.

SPCM 10437.

U. S. Army Court of Military Review.

Sentence Adjudged 30 April 1974.

Decided 29 Jan. 1976.

Appellate Counsel for the Accused: CPT Steven J. McAuliffe, JAGC; CPT Sammy S. Knight, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC.

Appellate Counsel for the United States: CPT Dale L. Anderson, JAGC; CPT James R. Anthony, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

O'DONNELL, Judge:

The appellant, a clerk in the Fort Belvoir Finance Office, was convicted of a number of offenses arising out of a fraudulent scheme to make unauthorized advance payments to various enlisted men. These offenses included larceny, graft, conspiracy to commit larceny, and forgery, in violation of Articles 121, 134, 81 and 123, Uniform Code of Military Justice, 10 USC §§ 921, 934, 881 and 923. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit $217.00 pay per month for six months, and to be confined at hard labor for six months. The convening authority approved the sentence.

Private Ralph Carter, one of the co-conspirators, testified against the appellant in return for an agreement by the convening authority to extend clemency. The convening authority inexplicably acted on the appellant's case, notwithstanding the line of cases precluding such action on his part. See e. g., United States v. Gilliland, 10 U.S.C.M.A. 343, 27 C.M.R. 417 (1959). This error requires a new review and action.

The appellant also contends that he was prejudiced by the receipt in evidence of statements made by him in violation of Article 31, Code, supra. Initially, we are confronted with the procedural problem of whether we may address this issue in view of the requirement for a new review and action.

This issue was first considered in United States v. Gilliam, 46 C.M.R. 974 (A.C.M.R. 1972). There, the Court held on similar facts that as there was no lawful review and action, there were no approved findings and sentence for them to consider. Accordingly, the Court held that it was precluded from considering other assignments of error raised by the accused. The rationale of that decision was later extended to preclude this Court from acting in those cases where the staff judge advocate and the convening authority were authorized to act but the staff judge advocate's review was deficient in some other respect. See e. g., United States v. Lovett, 47 C.M.R. 79 (A.C.M.R. 1973).

Not only do we consider Lovett to be an unwarranted extension of Gilliam,[1] but we disagree as well with the decision in Gilliam. To place the issue in proper perspective we must consider the underlying basis for Gilliam. In United States v. Albright, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958), the Court of Military Appeals held that a staff judge advocate who had induced a co-conspirator to testify against the accused and had assured him that he would recommend a sentence reduction in his case was disqualified to review the record of trial of the accused. The principle was thereafter extended to a convening authority who grants immunity to a government witness (United States v. White, 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958)), and to a convening authority who grants clemency to a prosecution witness pursuant to a pretrial agreement (United States v. Gilliland, supra).

These decisions do not hold that the review and action are null and void in such cases but merely reflect a desire on the part of the Court to avoid the appearance of evil and remove any aura of partiality that exists when a convening authority or staff judge advocate is called upon to pass judgment on his earlier action. See United States v. White, 10 U.S.C.M.A. at 64–5, 27

---

1. See dissenting opinion of Senior Judge Jones in Lovett, 47 C.M.R. at 80.

C.M.R. at 138–9. The Court of Military Appeals' adoption of a *per se* rule requiring a new review and action without regard for prejudice is a logical progression from earlier decisions where the Court held it would not test for specific prejudice but would reverse on a theory of general prejudice when a conflict or possible conflict exists. *See* e. g., *United States v. Hill*, 6 U.S.C.M.A. 599, 20 C.M.R. 315 (1956); *United States v. Hightower*, 5 U.S.C.M.A. 385, 18 C.M.R. 9 (1955); *United States v. Coulter*, 3 U.S.C.M.A. 657, 14 C.M.R. 75 (1954).[2] As we are dealing with general prejudice and not with a void review and action, there is no compelling reason why we may not review the record of trial in this case in accordance with Article 66 of the Code. Therefore, we shall.[3]

■ We turn then to the appellant's statements. On 10 December 1973, Sergeant First Class Archie Davis, who occupied a supervisory position at the Fort Belvoir Finance Office, received information that a voucher for advance pay had apparently been forged. Sergeant Davis, together with Staff Sergeant Theodore Heartley, his immediate subordinate, conducted an informal investigation within the finance office to determine if other vouchers may have been forged. Two other vouchers were discovered. Sergeant Davis and Sergeant Heartley also talked with several of the finance clerks in the office, including the appellant, to determine if they had any information concerning the vouchers. All of those questioned denied having any knowledge. Neither Sergeant Davis nor Sergeant Heartley advised any of the clerks of their rights under Article 31 of the Code before questioning them. Each of them,

however, suspected that the appellant might be involved in the criminal activities being investigated.

On the following morning, Sergeant Heartley received a telephone call from a friend of the appellant who informed him that the appellant wished to talk with him. Sergeant Heartley then met the appellant and his friend at the post cafeteria. Without any questioning by Sergeant Heartley, the appellant made a spontaneous statement admitting his responsibility for the finance fraud. When the appellant finished speaking, Sergeant Heartley questioned him about the incident. The record does not disclose either the questions or the appellant's answers.

At this time, Sergeant Heartley suggested that the appellant talk to Sergeant Davis about the incident. Up to this point, the appellant had expressed no desire to speak with Sergeant Davis.[4] Sergeant Heartley then called Davis and informed him that the appellant wanted to talk with him. Heartley did not tell Davis what the appellant wanted to talk about, but Davis believed it concerned the finance matter. Sergeant Davis met with the appellant and Sergeant Heartley in an automobile outside the cafeteria. The appellant, without being questioned, then made a statement substantially the same as the one made to Sergeant Heartley. Following the statement, Sergeant Davis questioned the appellant. Again the record does not reflect the questions or the answers. Neither Sergeant Heartley nor Sergeant Davis advised the appellant of his rights under Article 31.

At trial, the defense moved to suppress the statements made to Davis and Heartley because of the failure to warn under Article

---

2. The Court in *Coulter* also found specific prejudice.

3. Considerations of judicial economy and the rights of the appellant who may suffer unwarranted confinement during the extended period necessary to accomplish a new review and action support the course we follow. It is interesting to note that this is the procedure followed by the Court of Military Appeals. *See* e. g., *United States v. Winborn*, 14 U.S.C.M.A. 277, 34 C.M.R. 57 (1963).

4. Sergeant Heartley testified that after the appellant made his statement to him he felt that the matter was out of his hands and that any decision as to disciplinary action would be made by Sergeant Davis. In fact, Sergeant Davis, after talking with the appellant on 11 December, reported the conversation to a Sergeant Hessig, his immediate superior.

31. The military judge denied the motion and permitted the statements to come before the court. The appellant contends before us that he was prejudiced by the judge's ruling. The Government, on the other hand, urges us to affirm on alternative theories, viz., Heartley and Davis were not acting in an official capacity when the appellant made his statements and the appellant's statements were made spontaneously without interrogation and without any requests for statements.

The question of officiality need detain us but briefly. Although the two noncommissioned officers were acting to some extent out of personal concern for the appellant, they admittedly had an official interest in clearing up the matter within their area of responsibility in the finance office. Moreover, and aside from any technical question of officiality, Sergeant Heartley and Sergeant Davis were the appellant's immediate superiors. They occupied a position of responsibility over the appellant. This case at least comes within the purview of the recent decision in *United States v. Dohle*, 1 M.J. 223 (1975).

On the question of spontaneity, we agree with the Government. As to the statement made to Sergeant Heartley, the record clearly shows that the appellant spontaneously incriminated himself without any prompting or questioning by Sergeant Heartley. Accordingly, no warning was required. *United States v. Workman*, 15 U.S. C.M.A. 228, 35 C.M.R. 200 (1965); *United States v. Caliendo*, 13 U.S.C.M.A. 405, 32 C.M.R. 405 (1962).

The result is the same with respect to the second statement. This statement, like the first statement, was made spontaneously without questioning by Sergeant Davis or Sergeant Heartley. As previously noted, Sergeant Heartley did suggest to the appellant that he talk with Sergeant Davis. But this suggestion did not rise to the level of a request for a statement within the meaning of Article 31. *See United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969). Both statements, therefore, were properly admitted by the military judge.

The action of the convening authority dated 26 July 1974 is set aside. The record of trial is returned to The Judge Advocate General for a new review and action by a different staff judge advocate and convening authority.

Senior Judge JONES and Judge FELDER concur.