UNITED STATES

v.

Airman Basic Biff H. JONES, FR 452–98–3741, 3902d Transportation Squadron, 1st Strategic Aerospace Division (SAC).

ACM 22102.

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 May 1976.

Decided 27 Dec. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner, Colonel Robert W. Norris and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial, the accused stands convicted of a single offense of larceny of property valued at about $2,600.00, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence is a bad conduct discharge, confinement at hard labor for five months, and forfeiture of $300.00 per month for five months.

Though several errors have been assigned, for purposes of this decision we will address only appellate defense counsel's contention that the convening authority was disqualified to act on the record. For the reasons set forth below, we agree.

The accused conspired with two other airmen to steal various items of stereo equipment. One of the accused's coconspirators, an Airman Romines, was tried before the accused and received a sentence that included confinement at hard labor for 14 months. During the accused's trial, the trial counsel called Airman Romines as a witness. Romines' testimony extensively implicated the accused in the theft and thereby contributed to his conviction.

The record reflects that before he testified, the trial counsel made a promise to Romines that "in return for his truthful testimony" he would recommend to the Commander-in-Chief, Strategic Air Command (CINCSAC), that a minimum of two months be "knocked off" his sentence. That commander was the convening authority in the Romines case as well as that of the accused now before us. There is no indication that CINCSAC was aware of the trial counsel's promise at the time it was made or when Romines testified against the accused.

Upon completion of the record of trial, it was referred for action to the Commander, 1st Strategic Aerospace Division, Vandenberg Air Force Base, California, a commander subordinate to the CINCSAC. Included in the allied documentation in the record is a copy of a message from the SAC Commander to the Vandenberg Commander explaining that the record was being referred for his action pursuant to the Manual for Courts-Martial, 1969 (Rev.), paragraph 48c. The message reflects that the record referral was due to the disqualification of the CINCSAC Staff Judge Advocate to review the record because of a defense trial and post-trial challenge to the sufficiency of the pretrial advice authored by that functionary. See *United States v. Engle,* 24 U.S.C.M.A. 213, 51 C.M.R. 510, 1 M.J. 387 (1976). The message contains an additional assertion that CINCSAC was not disqualified from acting on the record because he had no knowledge of the trial counsel's promise of a clemency recommendation to the Government witness.

■ The Vandenberg Commander thereafter acted on the case on the basis of advice furnished by his staff judge advocate. Though the reviewer did not concur with the Strategic Air Command position that CINCSAC was qualified to act on the record, he nonetheless advised the convening authority that his subordinate status to CINCSAC was not in itself disqualifying. The reviewer reasoned that since the trial counsel, the individual who made the actual promise to the witness, was not a subordinate of the convening authority, any prejudgment of his as to witness Romines' credibility would not be attributable to the convening authority. Elsewhere in the review (specifically, in an addendum thereto), while discussing clemency considerations, the staff judge advocate advised the convening authority that witness Romines had in fact received a two-month reduction in confinement for testifying against the accused.*

■ Initially, we agree with the staff judge advocate's conclusion that in these

---

* In that connection, the record in the *Romines* case has also been before us for review. *United States v. Romines,* No. 22088 (A.F.C.M.R. 22 October 1976). We have accordingly judicially noted that in his action in *Romines* (which predates the convening authority's action in this case) the convening authority, CINCSAC, approved a sentence which included confinement at hard labor for two months less than the term adjudged.

circumstances the original convening authority, CINCSAC, was disqualified from acting on the accused's record. "It is well settled that the convening authority may not involve himself in granting immunity or clemency to a Government witness and thereafter review or act upon the case." *United States v. Sierra-Albino,* 22 U.S.C.M.A. 63, 48 C.M.R. 534 (1974); *United States v. Dickerson,* 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973); *United States v. Diaz,* 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United States v. Williams,* 21 U.S.C.M.A. 235, 34 C.M.R. 15 (1963); *United States v. White,* 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958). Here, though there is no indication that CINCSAC was aware of the trial counsel's promise of a recommendation for clemency to the accomplice witness in exchange for his testimony, he did become involved following the accused's trial. His reduction of Romines' sentence was precisely in accord with the trial counsel's promise. This involvement in the prosecution of the accused cast doubt on his ability to thereafter impartially perform his statutory duty. To paraphrase pertinent language from cases on the subject, it would have been asking too much of him to impartially determine the weight to be given the witness' testimony when he had already substantially rewarded him for his part in bringing about the accused's conviction. See *United States v. White,* supra; *United States v. James,* 51 C.M.R. 357, 1 M.J. 487 (A.F.C.M.R. 1975), aff'd, 50 C.M.R. 920 (1975).

Having so decided, we turn now to the corollary question of whether the convening authority was qualified to act upon a record that his superior could not act upon. In *United States v. Dickerson,* supra, the United States Court of Military Appeals extended the earlier cited disqualification rule by holding that a convening authority is disqualified to review and act upon a record by reason of his knowledge that a *subordinate commander* granted clemency to a prosecution witness. The Court was of the view that the relationship between such commanders precluded the totally impartial review contemplated by the Uniform Code of Military Justice. Subsequently, in *United*

*States v. Sierra-Albino,* supra, 48 C.M.R. at page 536, the Court declared that the fact a convening authority becomes aware of his subordinate commander's action after the trial, rather than preceding it, is not a significant factor in the disqualification issue. Said the Court:

> Whenever a convening authority learns a subordinate has vouched for the credibility of a witness by extending immunity (clemency), it is still asking too much of the convening authority to free himself wholly of the influence of his subordinate's judgment in his own review and action upon the case.

█ In the present case, of course, we deal with the inverse command relationship of that confronting the Court of Military Appeals in *Dickerson* and *Sierra-Albino,* both supra. Here, the convening authority acted on the record with knowledge that a *superior commander* granted clemency to an important prosecution witness. If, as the cited cases hold, it is asking too much of a superior commander to free himself wholly from the influence exerted by his subordinate's judgment, surely it would be asking almost the impossible to expect a subordinate commander in the chain of command to disregard the view unmistakenly expressed by his own commanding officer.

In *United States v. James,* supra, we found error necessitating a new review and action where the post-trial review was prepared by a deputy staff judge advocate whose superior and commander were disqualified because they had both been involved in the granting of clemency to a chief prosecution witness who had cooperated with the Government. In *United States v. Hurd,* 49 C.M.R. 671 (A.C.M.R.1974), our sister Army Court of Military Review reached the same conclusion where clemency was extended to the chief prosecution witness by a commander superior to the convening authority who acted in the accused's case, and where the acting staff judge advocate who authored the review was aware that the staff judge advocate had blessed the clemency arrangement in order to obtain the witness' vital testimony.

The same result is dictated here. By his action of extending clemency to Romines, the Commander-in-Chief of Strategic Air Command demonstrated a prejudgment of the witness' credibility. And, of course, the convening authority was quite aware of that prejudgment of credibility by his superior at the time he was charged with the independent duty of performing that same function in the accused's case. Manifestly, the convening authority might have been somewhat hesitant to discard the judgment of credibility already made by his superior commanding officer. See *United States v. Ward,* 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975). We accordingly find that he should not have acted on the record. Implicit in this finding is that the convening authority's staff judge advocate, for identical reasons, should not have prepared the post-trial review.

█ To preclude recurrence of the situation here encountered, responsible personnel must insure that when the official who would normally act on a record of trial as the convening authority is disqualified, the commander tasked with that responsibility is not in the chain of command of the disqualified commander. We recognize that this counsel appears contrary to the following provision of paragraph 84c of the Manual for Courts-Martial, supra, which, as seen, was strictly adhered to in the case before us:

> [I]f the person who normally would take action as convening authority is disqualified, as when he has granted immunity to a witness for the prosecution  .  .  .  the normal convening authority will forward the record of trial—ordinarily through the chain of command—to an officer authorized to exercise general court-martial jurisdiction.

However, this provision must not be construed to dictate a vertical (whether upward or downward) intracommand disposition of cases involving disqualified convening authorities. If such meaning is intended, the language conflicts with other law or military justice principles and is not therefore effective. *United States v. Montgom-*ery, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970); *United States v. Cruz,* No. 22108, 2 M.J. 731 (A.F.C.M.R. 23 December 1976), concurring opinion by Chief Judge LeTarte. In light of the decisions cited herein, it seems more likely the chain of command language of the Manual for Courts-Martial is intended to simply insure the customary adherence to military regularity and procedure in situations requiring inter command commerce.

For the reasons stated, the convening authority's action is hereby set aside. The record of trial is returned to The Judge Advocate General, United States Air Force, for referral to an appropriate officer exercising general court-martial jurisdiction for a new review and action.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.