UNITED STATES

v.

**John A. KING, 544 52 5560, Staff Sergeant E–6, U. S. Marine Corps.**

**NCM 77 1399.**

U. S. Navy Court of Military Review.

Sentence Adjudged 22 April 1977.

Decided 8 Dec. 1977.

LT Vance J. Bettis, JAG, USNR, Appellate Defense Counsel.

LT Christine M. Yuhas, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and BAUM and MALLERY, JJ.

DUNBAR, Senior Judge:

Appellant was tried at Marine Corps Base, Camp Lejeune, North Carolina, on 20, 21 and 22 April 1977 by a general court-martial convened by Commanding General, Marine Corps Base, Camp Lejeune, North Carolina. He was charged with involuntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 U.S.C. § 919 and one specification each of drunken driving and operating a vehicle in a wanton manner, both in violation of Article 111, Uniform Code of Military Justice. Prior to receiving appellant's pleas, the military judge, on motion of the defense, dismissed the two specifications laid under Article 111, Uniform Code of Military Justice, for want of proper investigation. To the remaining charge and its specification, appellant pleaded not guilty. The members found him not guilty of a violation of Article 119, Uniform Code of Military Justice, but guilty of the lesser included offense of negligent homicide, in violation of Article 134, Uniform Code of Military Justice. Appellant was sentenced by the members to a bad conduct discharge and to be reduced to E–1.

After trial, on 27 May 1977, trial defense counsel submitted a petition for clemency to the convening authority requesting that the bad conduct discharge be disapproved and further requesting a reevaluation of appellant's removal from noncommissioned officer status. Notwithstanding, the convening authority approved the sentence as adjudged.

The charges of which appellant was found guilty arose from a head-on automobile collision occurring at 2100, on 2 December 1976. The prosecution charged that appellant, while intoxicated, weaved across the center line of the highway, and struck another vehicle, killing the driver.

Appellant's first three assignments of error allege that homicide through negligence is not an offense under the Code; there is no proof that the conduct of appellant was to the prejudice of good order and discipline; and the court-martial was without jurisdiction because the convening authority had expressed an opinion of appellant's guilt prior to the conclusion of the Article 32 investigation. In his brief, appellant presents no arguments or cites any cases in support of his contentions. Nevertheless, we conclude that homicide through negligence is an offense under the Code. Paragraph 213f (12), Manual for Courts-*Martial, United States, 1969* (Re-

vised edition) states that "negligent homicide is any unlawful homicide which is the result of simple negligence." Additionally, we conclude as a matter of law that negligent homicide under the circumstances of this case is prejudicial to good order and discipline. The third assignment of error arises because the convening authority endorsed a JAG MANUAL investigation into the death of the driver of the other vehicle. Appellant asserts that this rendered the convening authority an accuser.

Here, the convening authority merely endorsed an investigation into the death of a member of the command. He acted in his official capacity on the basis of information then available to him. There is no indication that his interest in the case was any more than an official interest in the good order of his command or that he strongly held the opinions of the drafter of the second endorsement to the investigation. The convening authority was neither a witness, victim, nor participant in the alleged offense. There is no indication that he was acquainted with the victim. There is no more than a routine endorsement for the convening authority's command, signed by direction, made pursuant to the JAG MANUAL to show any prior connection with this case. Although appellant does not cite any precedents in support of his position, those examples presented by the Government where the convening authority became an accuser are readily distinguishable. There is little question that the convening authority in this case was acting in an administrative capacity in taking action on the investigation. In this connection, we note that the convening authority was advised in the staff judge advocate review of his powers and responsibilities in taking action on the record of trial. These powers and responsibilities are clearly distinguishable from the convening authority's administrative responsibilities as far as approving a line-of-duty misconduct investigation.

Appellant, in his fourth assignment, asserts that the convening authority was disqualified to review the record of trial because he had formally expressed his disbelief of the defense theory of the case prior to trial. As indicated before, the facts show that the convening authority had endorsed a line-of-duty/misconduct investigation concerning the death of the victim and injuries suffered by appellant. In the endorsement, the convening authority noted that the victim was apparently intoxicated and driving in excess of the posted speed limit, but those were not factors in the course of the accident. The endorsement also stated that before the accident appellant's driving had been witnessed by occupants of a following car. They asserted that appellant's car ran off and then back on the road, weaved across the center lane forcing two oncoming cars off the road, ran off the road again, re-entered the road, again crossed the center line and then struck the victim's car head-on.

At trial, the defense sought to establish: (1) that the condition of the road where the accident occurred was the primary causative factor of the accident; (2) that the victim was quite intoxicated; and (3) that the victim had crossed over into appellant's lane causing appellant to go off the road, that appellant thereupon attempted to negotiate the sunken shoulder to regain the road, and that in doing so, his truck was hurled against the victim's vehicle. Nevertheless, the court members chose not to believe the defense theory of the case.

Appellant asserts, essentially, that the convening authority, having previously expressed opinions concerning the case in his endorsement on the investigative report, could not act impartially; citing *United States v. Hill*, 6 U.S.C.M.A. 599, 20 C.M.R. 315 (1956) and *United States v. White*, 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958). Furthermore, he states that the Court of Military Appeals has repeatedly reaffirmed its holding in *White*, to wit: that when a convening authority takes certain action or makes certain statements concerning the subject of a court-martial, thereby rendering the likelihood of an unbiased, fair and impartial review improbable, that convening authority is disqualified from taking any action with respect to the record of

that court-martial; citing *United States v. Marks*, 19 U.S.C.M.A. 389, 41 C.M.R. 390 (1970); *United States v. Donati*, 14 U.S.C.M.A. 235, 241, 34 C.M.R. 15, 21 (1963); *United States v. Winborn*, 14 U.S.C.M.A. 277, 280, 34 C.M.R. 57, 60 (1963); *United States v. Howard*, 23 U.S.C.M.A. 187, 48 C.M.R. 939 (1974); and *United States v. Jackson*, 3 M.J. 153 (C.M.A.1977). Nevertheless, we conclude that although it may have been wiser for the convening authority not to have endorsed the investigation, we see no evidence showing any predisposition or personal interest in the case on the part of the convening authority. The endorsement was a routine administrative act, entirely separable from the discretion and judgment he was bound to utilize in acting on the record of trial.

Appellant claims further, in assignments of error five and six, that the military judge prejudicially failed to instruct on intervening cause and erred by failing to tailor his instructions on findings to the evidence. He states that the testimony of appellant concerning the "jogging over" of an oncoming vehicle into his lane of traffic was certainly sufficient evidence from which the members could reasonably infer the existence of an intervening cause which broke the chain of causation between appellant's driving and the victims death.

█ The "intervening cause" which will relieve of liability for an injury is an independent cause which intervenes between the original wrongful act or omission and the injury, turns aside the natural sequence of events, and produces a result which would not otherwise have followed and which could not have been reasonably anticipated. Black's Law Dictionary, 4th ed. We believe the military judge acted correctly in refusing to give an instruction on intervening cause to the members. Actually, there does not appear to be any actual intervening cause involved here. Had there been a third vehicle involved, or had appellant claimed one of the wheels of his vehicle had dropped off or that an earthslide had forced him over into the on-coming lane then there would be some evidence of an independent intervening cause. Here, on the other hand, we have the simple fact of two vehicles approaching each other from opposite directions and no third element. Consequently, we do not think the defense of intervening cause was raised by the evidence and also believe the judge gave full and complete instructions on the matters raised by the evidence.

· █ Finally, appellant asserts that the sentence is inappropriately severe. At trial, appellant offered no evidence in extenuation and mitigation, except a plea to the court members explaining to them his position with respect to his personal finances and burden to his family that confinement or forfeitures would impose. He asked that, if he were to be punished, it be by a bad conduct discharge or reduction. He did not, at that time, offer to the court members all the petitions, statements, or evaluations which could be expected in mitigation. None of these appeared at trial. None of this was before the court members, just the appellant's plea. There is no way of knowing what caused the members to render the sentence they did in this case. Perhaps, sympathetic to the appellant's plea, they chose not to cause the appellant's innocent family to suffer by imposing forfeitures or confinement; perhaps they desired to punish only that person they felt responsible for the death of the victim. They awarded appellant a bad conduct discharge and reduction to E–1; A sentence well within the limits authorized by the Table of Maximum Punishments. Paragraph 127c, *Manual, supra*.

We have examined the fitness reports which appellant has now attached to the record showing his prior good performance, as well as his petition for clemency. Nevertheless, this Court cannot conclude that the sentence is illegal or unconscionable as a matter of law. Nor does this Court have the power to suspend. Accordingly, whether the appellant should be restored to duty is a matter within the judgment and authority of the Naval Clemency and Parole Board.

In view of the foregoing, the findings and sentence, as approved below, are affirmed.

BAUM, Judge (concurring in the result):

█ I concur with Senior Judge Dunbar's rejection of the errors assigned and with his action affirming the findings and sentence. I would base my response to assignments II and IV, however, solely on the fact that the convening authority did not personally sign the endorsement to the JAG Manual Investigation into the death of the victim in this case. Appellant asserts that this endorsement rendered the convening authority an accuser and disqualified him from reviewing the record of trial. I disagree because there is no showing that the convening authority ever personally expressed or concurred in the views contained in the investigation's endorsement. That document was signed by a subordinate of the convening authority under the "by direction" authority given certain members of the convening authority's staff. In such a situation there must be further evidence committing the convening authority to the views expressed therein before I could accept the assertions raised by appellant.

MALLERY, Judge (concurring in the result):

█ I concur in the result and specifically with the reasoning expressed by Judge Baum in his concurring opinion.