**UNITED STATES**

v.

**Dan Arvil LILLY, 427 94 3623, Hospital Corpsman Third Class (E–4), U. S. Navy.**

**NCM 77 1013.**

U. S. Navy Court of Military Review.

Sentence Adjudged 8 Sept. 1976.

Decided 18 May 1979.

LT Christopher C. Henderson, JAGC, USNR, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before BAUM, Senior Judge, and MICHEL and GRANGER, JJ.

GRANGER, Judge:

This case was tried over 2½ years ago, and is before this Court for the second time. On 18 November 1977, after reviewing the record and finding no error materially prejudicing appellant's substantial rights, we affirmed the findings and sentence as approved by reviewing authorities below. *United States v. Lilly,* No. 77 1013 (N.C. M.R. 18 Nov. 1977) (unpublished). Appellant petitioned the Court of Military Appeals for grant of review. That Court seized upon an issue not raised by counsel

before that Court or this one. Granting the petition for review, the Court of Military Appeals summarily set aside this Court's decision, vacated the staff judge advocate's review and the supervisory authority's action, and returned the case for new review by different convening and supervisory authorities. *United States v. Lilly*, 4 M.J. 350 (C.M.A.1978). This action was necessary, according to the higher Court, because the convening authority had granted immunity to a Government witness, and, consequently, the supervisory authority was disqualified from acting on the case "[f]or the reasons expressed in *United States v. Ward*, 23 U.S.C.M.A. 572, 50 C.M.R. 837 (1975) . . . ." *Id.* A new convening authority has acted, a new staff judge advocate has reviewed the case, and a new supervisory authority has taken action. Pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, this Court once again has received the case for review.

We must confess that we do not understand the holding of the Court of Military Appeals in this case. In *Ward*—the only case cited by the Court of Military Appeals—the thrust of the decision was that the immunity grant demonstrated a pretrial judgment as to the credibility of an *important* prosecution witness, "which judgment the [reviewing authorities] may be hesitant to discard." *Id.* at 577, 50 C.M.R. at 842. In other words, the danger was that reviewing officials would place too much reliance upon the immune witness's testimony and thereby fail to fairly weigh the evidence in reaching their judgment as to the correctness of the findings. The same rationale is embraced in *United States v. Dickerson*, 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973), where the Court stated, "[W]e believe 'it is asking too much' to expect that General Hennessey would be 'wholly free of the influence . . . [of his subordinate commanders'] action[s]' in reviewing Walford's credibility." *Id.* at 491, 47 C.M.R. at 792. And in *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 65, 48 C.M.R. 534, 536 (1974), the same reasoning prevailed: "The reason for the disqualification is that such action by a convening authority renders his impartiali-

ty suspect with reference to weighing the testimony of the witness to whom he granted immunity or clemency."

But in the case at bar, the convening authority granted immunity to a prosecution witness who testified regarding four specifications. The court members found appellant not guilty of all those offenses. Consequently, the immune witness's testimony was no longer a factor in the case, and the reviewing authorities were not called upon to review the credibility of this witness. There seems to be no reasonable basis for holding the reviewing authorities to be disqualified from acting in this case. *See United States v. Cruz*, 23 U.S.C.M.A. 238, 49 C.M.R. 291 (1974), in which the Court authorized affirmance where the immune witness's testimony could not affect the remaining findings.

Nor is this the only reason we believe the higher Court made a mistake when it held that the reviewing authority herein was disqualified. Even if we could accept the soundness of all the prior cases, and even if we would ignore the fact that the immune witness's testimony in this case was rendered immaterial by the not-guilty findings, prior case law would still not support the holding of the Court of Military Appeals in this case.

The thrust of *United States v. Ward* and *United States v. Dickerson*, both *supra*, is that when a subordinate of the reviewing authority has somehow manifested a belief in the credibility of a witness, the reviewing authority is disqualified from reviewing the case because his judgment might be colored by the views of his subordinate. The linchpin of this rationale is the superior/subordinate relationship between the reviewing officials. Yet, the record in this case reflects no such relationship.

In the case at bar, the court-martial was convened by the Commanding Officer, Naval Regional Medical Center (NRMC), Philadelphia, a rear admiral in the Medical Corps of the Navy. He took the initial action in the case and forwarded it to the Commandant, Fourth Naval District. This

officer was also a rear admiral, but he was a line officer and was not in the Medical Corps. The Commandant, Fourth Naval District is not in the chain of command of the Commanding Officer, NRMC Philadelphia. The latter officer's immediate superior is the Chief, Bureau of Medicine and Surgery, whose superior is the Chief of Naval Operations. SNDL Part 2 OPNAV PO9B3–105 (Edition 62) (now superceded, but with no pertinent change) p. 190. In a different chain of command, the Commandant, Fourth Naval District is the immediate subordinate of the Chief of Naval Operations. *Id.* at 192. The Commandant, Fourth Naval District is the area coordinator for the district in which the NRMC Philadelphia is situated, *id.* at 201, 202, but this designation as area coordinator does not create any command relationship. *See* OPNAV Instruction 5400.24B, Subj: Command, area coordination, and command relationships, paragraph 5. The Court of Military Appeals' reliance upon *United States v. Ward, supra,* which turns up on the superior/subordinate relationship of the reviewing officials, is therefore misplaced.

Other than the fact that the Commandant of the Fourth Naval District is authorized to review courts-martial convened by the Commanding Officer, NRMC Philadelphia, in the absence of direction to the contrary from the latter's superiors, *see* JAGMAN, paragraph 0125b(2)(a), there is no official or unofficial relationship between these two officers reflected in the record. Presumably, if the Court of Military Appeals relied upon some relationship *not* reflected in the record, the Court would have so stated in its decision.

For these reasons, the holding of the Court of Military Appeals is mystifying, unless it can be written off as nothing more than an improvident and unfortunate mistake, attributable, perhaps, to the fact that the Court decided the case without benefit of briefs or argument of counsel. *See United States v. Reed,* 1 M.J. 1114, 1117–1119 (N.C.M.R.1977) (Baum, J., concurring), where concern is expressed regarding precedent-setting decisions being rendered at the appellate level without elicitation of the competing views of the adversaries. We believe that the higher Court's action herein was predicated upon a misunderstanding, and we are of the opinion that their decision was not intended to effect any drastic change in the law.

If we are correct, however, this is not the first mistake made in this area. Unfortunately, the entire line of cases furnishes solid support for Sir Francis Bacon's observation that there is no worse torture than the torture of laws.

The basic proposition is that a general court-martial convening authority who grants immunity in order to secure the testimony of a witness in a court-martial is disqualified from reviewing the record of that trial. *United States v. White,* 10 U.S. C.M.A. 63, 27 C.M.R. 137 (1958). This is so, we are told, because, "It is asking too much of him to determine the weight to be given this witness's testimony since he granted the witness immunity in order to obtain his testimony." *United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972).

Logic does not compel that conclusion. The facts of a given case might show or suggest that the convening authority has indeed formed an opinion as to the witness's credibility, in which cases the *White* holding would be valid. But the granting of immunity to secure a witness's testimony, standing alone, is not indicative of the grantor's confidence in the credibility of the witness. A court-martial is a search for the truth. If a service member is accused of a crime, and a witness is in a position to shed light upon the matter, it is more likely that the court will reach a fair result if the witness tells what he knows. Certainly, if a potential witness has made incriminating statements about a fellow service member accused of a crime, he should not be permitted to sully the reputation of another without being subjected to searching examination under oath. It does not necessarily follow that, when a convening authority grants immunity to a witness, he has assessed favorably that witness's credibility, or has ascribed any particular weight to that wit-

ness's prospective testimony, or has even given the matter of credence any thought at all. As stated in Judge Latimer's dissenting opinion in *United States v. White, supra,* at 66, 27 C.M.R. at 140:

> The purpose of the grant is merely to remove the bar of self-incrimination which closes the mouth of one who is known to have some information relating to the offense. The interest of the law is to ascertain the truth. It is not necessary that a convening authority, to make those objectives attainable, have a fixed opinion on the veracity of a witness. On the contrary, he could not possibly make that determination until the person who received the grant had testified under oath, been cross-examined, and subjected to the tests of credibility and balanced against any witnesses testifying in opposite vein. It should be obvious that the witness starts under a cloud of unreliability, for he is himself a party to the crime and there is a natural tendency to reject the testimony of an admitted criminal.

The basis for the holding in *White* is not that, in every case where immunity is granted, the general court-martial convening authority is *actually* biased or predisposed to believe the witness, but rather that the granting of immunity raises "at least some doubt of his ability to impartially perform his statutory duty." *United States v. White, supra,* at 64, 27 C.M.R. at 138. As a matter of policy, therefore, the higher Court has concluded that it is better that someone else review the record in such cases, because, "[i]n the interests of justice, the appearance of evil should be avoided as well as the evil itself." *Id.,* quoting from *United States v. Hill,* 6 U.S.C.M.A. 599, 601, 20 C.M.R. 315, 317 (1956). Since we believe that, without more, the mere granting of immunity reveals nothing regarding a convening authority's bias, we conclude that it would be preferable to examine each case to determine if such bias is shown, or if some appearance of bias is manifest, and that this unwarranted presumption should be rejected.

The principle that a convening authority who grants immunity cannot thereafter review the case was extended in *United States v. Dickerson, supra,* to preclude a convening authority from reviewing cases in which he knows that a *subordinate commander* has granted a witness immunity, or other special dispensation, in exchange for his testimony. To find actual prejudice in such situations, we must first conclude that the convening authority will suppose that his subordinate's grant of immunity manifests the subordinate's determination that the witness is credible—an illogical conclusion in most cases, as discussed above—then we must go further and conclude that the convening authority will be so influenced by his subordinate's perceived thinking that the supervisory authority cannot or will not perform his statutorily-imposed duty to give the case a fair and impartial review. *See* Article 64, Uniform Code of Military Justice, 10 U.S.C. § 864; paragraph 84*a, Manual For Courts-Martial, United States, 1969* (Revised edition). General court-martial convening authorities did not reach that high station by "rubber-stamping" the action of subordinates, and certainly not by substituting the judgment of subordinates for their own where there is a duty to exercise personal judgment. Most, if not all, of these officers have commanded personnel in one, two or three wars. They have spent long military careers analyzing, approving *and rejecting* recommendations of subordinates, and making hard decisions that risk, and sometimes cost, the lives of those who serve under them. To presume that a general court-martial convening authority would shirk his duty to exercise his personal judgment, simply because he perceived that some subordinate concluded that a witness was credible, is both unwarranted and demeaning, and tends to undermine public confidence in military justice and military leadership. *See United States v. Holmon,* 3 M.J. 695 (N.C.M.R.1977). The possibility of actual prejudice in this situation is so remote that the "appearance" of unfairness is fanciful.

Further, in a large percentage of contested courts-martial, the convening authority, in taking his action on the case, perforce

believes some of the witnesses and disbelieves others, and his findings make it patently clear which witnesses he considers to be credible. If we believe that the supervisory authority so gullibly assimilates the views of his subordinates, he would be disqualified in all such cases, because the possibility that he would accede to the judgment of his subordinate is as great when that subordinate forms his view after trial as it is when he makes a pretrial judgment of the credibility of a witness. Indeed, the post-trial opinions of the subordinate, crystallized after a review of all the evidence, should be more reliable than his pretrial assessments; hence it would seem that there is *greater* chance the supervisory authority would be impressed by these post-trial judgments.

The fact of the matter is that it is extremely unlikely that any service member or civilian, except one irrationally predisposed to find wrongdoing on the part of military officials, could conjure up any apparition of evil in either of these circumstances. The higher Court's preoccupation with the appearance of evil in these cases is unfortunate, because the unwarranted suspicions regarding reviewing authorities' integrity, implicit in these holdings, are far more likely to denigrate the military justice system than is the action of the reviewing authorities with which the Court is so concerned.

The Courts of Military Review have further extended this rule of disqualification to encompass the theory that the *subordinates* of one who grants immunity are disqualified from acting as reviewing authority. *United States v. Gilmer*, No. 78 0345 (N.C. M.R. 28 June 1978) (unpublished); *United States v. Jones*, 2 M.J. 353 (A.F.C.M.R. 1976). Given the premises of *White* and *Dickerson*, this enlargement of the rule necessarily follows. As was stated in both *Gilmer* and *Jones*, if it is asking too much of a superior commander to free himself wholly from the influence exerted by his subordinate's judgment, surely it would be asking almost the impossible to expect a subordinate commander in the chain of command to disregard the views of his own commanding officer.

This line of reasoning has been further extended to disqualify a convening authority from reviewing a court-martial in which his staff judge advocate promised a witness a recommendation of clemency. *United States v. Ward*, 1 M.J. 176 (C.M.A.1975). And finally, in *United States v. Johnson*, 4 M.J. 8 (C.M.A.1977), the Court of Military Appeals stretched this rule to encompass situations where the *trial counsel* makes some promise to recommend clemency or testify in behalf of a witness in order to obtain the testimony of that witness. This action of the trial counsel is supposed to demonstrate his pretrial judgment that the witness is credible. His action, and apparently his opinion regarding the witness's credibility, are "imputed" to the staff judge advocate, "absent evidence indicating that the staff judge advocate did not place his blessing thereon." *United States v. Johnson, supra,* at 9, n. 4. Of course, generally speaking, a prosecutor *always* has a pretrial belief that his witness will testify truthfully. If he believed a witness intended to lie, he could not properly permit the witness to testify. *See* JAGMAN, §§ 0142, 0152, and Appendix A–1–p; ABA Standards, The Prosecution Function § 5.6(a) (1971). It would be no less logical, and maybe more so, to "impute" bias to the staff judge advocate in every case in which the trial counsel subpoenas a witness or orders one to appear, or otherwise induces testimony favorable to the Government: Subpoenaing a witness is always official action, whereas offering to testify for the witness might be a personal act not motivated by official duties as trial counsel.

All of these cases after *United States v. White, supra,* are merely unreasonable extensions of an unsound premise. But unless the Court of Military Appeals' holding in the case at bar is the unfortunate mistake we think it is, the higher Court in this case has broken the mold and finally destroyed any vestige of predictability that could be gleaned from these cases.

There is no allegation by the defense, and no indication in the record, that the Com-

manding Officer, NRMC Philadelphia, who initially reviewed this record, was not fair and impartial in his action, despite the fact that he was disqualified. The higher Court's reversal was necessarily predicated, not upon any actual bias shown by the reviewing authorities, but on the theory that their relationship resulted in the *appearance* of unfairness. In order to find that appearance, we must assume that the Commandant, Fourth Naval District, would interpret the fact that the Commanding Officer, NRMC Philadelphia, granted immunity to a prosecution witness to mean that the Commanding Officer considered that witness credible. Then we must assume that the Commandant would be so influenced by his perception of the convening authority's opinion that he, too, would place undue reliance on that witness' testimony. This is a difficult assumption to make, considering that the convening authority and the Commandant are in different chains of command, that one is a medical officer and the other is not, and that their only nexus would appear to be a working relationship arising from their efforts to coordinate their support for the Navy community they both serve. *See* OPNAV Instruction 5400.24B. Overcoming that hurdle, however, we must then assume that when the Commandant saw that the members of the court-martial obviously did *not* believe that witness and found the accused not guilty of the specifications regarding which the witness testified, the Commandant would conclude that the not-guilty findings were incorrect, and that, consequently, the Commandant, in a fit of petulance, would take action more detrimental to appellant than he otherwise would have. We find such reasoning too attenuated and implausible, and the appearance of evil too ethereal, to raise any issue of impartiality or unfairness, for which reason we are inclined to treat the higher Court's action in

this case as an aberration having no application beyond the proceedings of the instant case.[1]

It seems that the law in this area, having evolved to the point that it is totally divorced from logic, would be more fittingly memorialized in a Lewis Carroll novel than in the Military Justice Reporter. We urge the higher Court to restore reason to the law by rejecting this line of cases.

After the Court of Military Appeals returned this case for new initial review, it was forwarded to the Commanding Officer, National Naval Medical Center, Bethesda, Maryland, who took the convening authority's action, then forwarded the record to the Commandant, Naval District, Washington, D. C., who took the supervisory action herein, after having the record reviewed by his staff judge advocate. We have searched earnestly but in vain for some appearance of unfairness. We are unable to capture on this printed page any spectre of evil arising from these circumstances. We recognize that the relationship between the present convening/supervisory authorities is precisely the same as was the relationship between the first convening/supervisory authorities. We also recognize that the new convening authority is a Navy captain in the Medical Corps, junior in rank to, although in a different chain of command from, the Medical Corps admiral who granted the immunity to the prosecution witness in the first place. We decline to extend this line of cases by finding anything suspicious or compromising in these circumstances.

We find no error in the latest review below, and reject trial defense counsel's assertions to the contrary. We also find no merit to appellant's other assertions of error, except as noted below.

---

1. Indeed, it would be no more specious to argue that since at least 3 out of 4 court-martial members believed the witness was a liar, it can be presumed that the supervisory authority also made a prejudgment that the witness was lying, because "it is asking too much" to expect that the supervisory authority "would be wholly free of the influence" of these court members, who the convening authority obviously thought were the "best qualified for the duty [of deciding such matters] by reason of age, education, training, experience, length of service, and judicial temperament." *See* Article 25(d)(2), 10 U.S.C. § 825(d)(2); MCM, para. 4d.

Appellant was charged with the offense of solicitation, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge failed to instruct the members that one element of that offense is that the accused must have intended that the solicitee commit the offense solicited. In light of this error, appellant may not be punished for solicitation pursuant to footnote 7, paragraph 127c, *Manual for Courts-Martial, United States, 1969* (Revised edition). *United States v. Benton,* 7 M.J. 606 (N.C.M.R.1979). The instructions were nevertheless sufficient to support affirmance of appellant's conviction of a simple disorder, in that he wrongfully communicated to another language that requested the commission of an offense. *See United States v. Benton, supra.* We affirm appellant's conviction of that lesser-included offense. The remaining findings are affirmed. Upon reassessment, the sentence, as approved below, is affirmed.

Senior Judge BAUM and Judge MICHEL concur.